**Johnny T. BODIFORD, Plaintiff,**

v.

**STATE OF ALABAMA, et al., Defendants.**

**Civ. A. No. 93–D–993–N.**

United States District Court, M.D. Alabama, Northern Division.

May 17, 1994.

Charles Michael Quinn, Ann C. Robertson, Jon C. Goldfarb, Deborah A. Mattison, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff.

William A. Gunter, IV, David J. Dean, Otis J. Goodwyn, State of Alabama Dept. of Conservation & Natural Resources, James H. Evans, Office of the Atty. Gen., Montgomery, AL, for defendants. State of Ala., State Dept. of Conservation and Natural Resources, Charley Grimsley and Charles Kelley.

William A. Gunter, IV, David J. Dean, Otis J. Goodwyn, State of Ala., Dept. of Conservation & Natural Resources, James H. Evans, Office of the Atty. Gen., David B. Byrne, Jr., Robison & Belser, P.A., Montgomery, AL, for defendant Tim Cosby.

Dennis M. Wright, James H. Evans, Office of the Atty. Gen., Montgomery, AL, for defendant James D. Martin.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on defendants' motion for summary judgment, filed December 3, 1993. The plaintiff filed his response on December 20, 1993. Also, pending before the court are defendants' motion to dismiss and amended motion to dismiss. Because the motions to dismiss involve the same issues and arguments addressed in defendants' motion for summary judgment, the court will consolidate the motions to dismiss with the motion for summary judgment and address the motions simultaneously as a motion for summary judgment.

### Summary Judgment Standard

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In further elaboration on the summary judgment standard, the Court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). The court is to construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### Facts

Bodiford is employed by the Alabama Department of Conservation and Natural Resources (ADCNR). He has been employed by the ADCNR for approximately seventeen years. For thirteen of those years, the plaintiff has worked in the Game and Fish Division as a Conservation officer, but was transferred to the Marine Police Division in September 1989. As a Conservation officer for the Marine Police Division, he was required to ride long hours in a boat. After about a year, plaintiff developed congestive prostatitis. This condition causes severe pain in the lower abdomen area. He also developed high blood pressure. Both conditions apparently were the result of Bodiford's time riding in a boat.

In August 1991, on the advice of his physician, plaintiff requested a transfer back to the Game and Fish Division. This position required very little, if any, boat operation. The defendants denied his transfer request. Plaintiff made other requests for transfers in March, June, and August of 1992, all of which were denied.[1] Plaintiff alleges that he was told by the defendants that his requests for transfer were denied due to his disabilities, i.e. congestive prostatitis and high blood pressure, and because he attended church on Sunday.

On May 26, 1992, the plaintiff filed a charge with the EEOC alleging he had been discriminated against in the denial of his requests for transfer because of his religion. On June 30, 1992, the defendants placed the plaintiff on restricted duty apparently until an appropriate resolution to the problem could be found. On August 24, 1992, the plaintiff amended his EEOC charge to include a charge of discrimination based on his disabilities. In June 1993, plaintiff was transferred to a position of Boat Theft Investigator for the Marine Police Division. In July 1993, the EEOC determined that though there was not sufficient evidence to support plaintiff's allegations of discrimination based on religion, there was sufficient evidence to support a claim of discrimination based on disability and issued the plaintiff his right to sue letter.

Plaintiff filed this action on August 13, 1993. His complaint contains seven counts against six defendants. The defendants are the State of Alabama, ADCNR, Charles Grimsley, current Commissioner of ADCNR, Charles Kelley, Director of the Game and Fish Division, Tim Cosby, Chief Enforcement Officer for the Game and Fish Division,

---

1. Each request sought a transfer to different vacancies in the Game and Fish Division. Bodiford requested to be transferred to the vacant positions as Conservation officer in Cleburne, Jefferson, and Cherokee counties.

and James Martin, former Commissioner of ADCNR. Counts 1 and 2 are based on the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, *et seq.* Count 3 is based on § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Count 4 is based on 42 U.S.C. § 1983, pursuant to a violation of § 504 of the Rehabilitation Act. Count 5 is a claim under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment. Count 6 is a claim under Title VII. Finally, Count 7 is a claim under 42 U.S.C. § 1983 for violations of the First Amendment.[2]

## Discussion

### A. Title I and II of ADA and Title VII

■ The defendants, first, assert that summary judgment is due to be granted on Counts 1, 2, and 6 of the complaint because the plaintiff failed to file his charge with the EEOC within 180 days of the alleged wrongful conduct. The defendants argue that the first denial of a transfer was in August 1991. The plaintiff did not file his charge with the EEOC until May 26, 1992, some 269 days after the occurrence of the alleged discriminatory conduct, and clearly, after the 180 days had expired. The plaintiff counters by arguing that the repeated denials of plaintiff's requests for transfer constitute a "continuing violation" under Title VII and the ADA with the first denial occurring in August 1991 and the most recent denial occurring in August 1992. Plaintiff contends that it is a "continuing violation" because the denials represent an ongoing policy to discriminate against the plaintiff due to his disability and religion. The defendants assert that the August 1991 denial was a one time violation, that the subsequent denials by the defendants were just the continuing effects of the one time violation, and that the continuing effects of a one time violation do not constitute a continuing violation.

"In determining whether a discriminatory employment practice constitutes a continuing violation, this Circuit distinguishes between 'the present consequence of a one time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does.' " *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir.1993) (citing *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992)). "[T]he proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful.... The emphasis is not upon the effects of earlier employment decisions; rather, it 'is upon whether any present *violation* exists.' " *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (citations omitted).

Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice. However, where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e–5(e) that the plaintiff file his charge of discrimination within 180 days of the discriminatory act.

*Beavers,* 975 F.2d at 796 (citing *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980)). Courts have consistently recognized that discrimination in promotion and transfer are a continuing violation under Title VII. *See Serpe v. Four–Phase Systems, Inc.,* 718 F.2d 935 (9th Cir.1983); *Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir.1983); *Fisher v. Procter & Gamble Mfg. Co.,* 613 F.2d 527 (5th Cir.1980), *cert. denied,* 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981); *Clark v. Olinkraft, Inc.,* 556 F.2d 1219 (5th Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978).

The threshold issue in this matter is whether or not the defendants repeated deni-

---

**2.** The court notes that in the motion for summary judgment, the defendants failed to challenge the merits of Count 3 (§ 504 of the Rehabilitation Act) and Count 7 (§ 1983 based on the First Amendment). However, for Count 7, the defendants assert a defense of qualified and absolute immunity.

als of transfer to the plaintiff, allegedly because of his disability and religion, constitute a continuing violation or whether the August 1991 denial of a transfer was a one time violation whose continuing effects were the subsequent denials of the plaintiff's request. The court finds that the facts, as alleged by the plaintiff, constitute a continuing violation so that the plaintiff's claims under Title I and II of the ADA and Title VII (Counts 1, 2, and 6, respectively) are not time barred. The evidence demonstrates that the plaintiff was repeatedly denied a transfer to the Game and Fish Division between August 1991 and August 1992.

■ The defendants argue that after the initial denial in August 1991, the subsequent requests for transfer were really only requests for reconsideration of the initial denial. Therefore, the defendants assert that there was only a one time violation whose continuing effects were the subsequent denials. The court finds no merit in this argument. There is no evidence presented that the plaintiff was seeking reconsideration of the original denial. Instead, the evidence demonstrates that the plaintiff requested the transfers as vacancies arose in local offices around the state in the Game and Fish Division. The plaintiff has presented letters he received from the defendants that indicate the reason for the denials was his physical disability. The plaintiff also stated that during meetings with the defendants, he was told that another reason for the denials of transfer was because he attended church on Sunday. Further, the EEOC stated in its finding that the "[e]vidence also established that [the defendants'] requirements of a pre-offer medical examination and being in good health are **per se violations of the ADA.**" [Pl.'s Ex. L at 104 (emphasis added)]. Clearly, looking at the facts in a light most favorable to the plaintiff, the court finds that Bodiford has alleged a continuing violation under the ADA and Title VII in that there existed a systematic discriminatory policy at the ADCNR to refuse transfers to the plaintiff due to his physical disability and his

religion. Having found that there exist a continuing violation, the court finds that Counts 1, 2, and 6 are not be time barred.[3]

■ Defendants next argue that summary judgment is due to be granted as to defendants State of Alabama, Martin, Grimsley, Kelley, and Cosby because none of these defendants were named as a defendant or respondent in either of the EEOC charges. The plaintiff asserts that the defendants fall within the exceptions to the general rule that defendants in a subsequent civil actions must be named as respondents in the EEOC charge. Plaintiff also points to the body of the EEOC charge wherein he specifically identifies defendants Kelley and Martin.

> Charges filed with the EEOC must be liberally construed because they are made by persons who are unfamiliar with the technicalities of formal pleadings and who usually do not have the assistance of an attorney.... Weight and credibility should be given to the construction or meaning the EEOC gives to charges filed with them.

*Tillman v. City of Boaz,* 548 F.2d 592, 594 (5th Cir.1977) (citations omitted).

> [T]he "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

> The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is *not* filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action. **Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the**

---

3. The defendants have also argued that Counts 1 and 2 of the plaintiff's complaint should be dismissed because the alleged unlawful conduct occurred prior to the effective dates of Title I (July 26, 1992) and Title II (January 26, 1992) of the ADA. However, having found that the discriminatory conduct is continuing in nature, the defendants' argument must fail.

**charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.**

*Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970) (emphasis added).[4] "The Fifth and Eleventh circuits, ..., have adopted the *Sanchez* rule and permit suit against an unnamed party where the party's involvement is likely to have been revealed in the course of the EEOC investigation which could reasonably have been expected to grow out of the charge." Barbara L. Schlei & Paul Grossman, *Employment Discrimination Law,* 415 (2nd ed. Supp.1989); *see Wright v. Manatee County,* 717 F.Supp. 1493 (M.D.Fla.1989) (involving a situation where county commissioners not named in charge may be sued since they are reasonably within scope of EEOC investigation and there is sufficient interest between them and the county to satisfy the intent of Title VII that defendants have notice of the charge.)

Applying the *Sanchez* rule to our facts, the court finds that, even though they were not named in the EEOC charge, the defendants were reasonably within the scope of the EEOC investigation and there is sufficient identity of interest between them and the ADCNR to satisfy the intention that the defendants have notice of the charge. *See Greenwood v. Ross,* 778 F.2d 448 (8th Cir. 1985). The unnamed defendants were officers of the Alabama Department of Conservation and Natural Resources, the named defendant. The plaintiff alleges that the defendants were the decision makers involved in the discriminatory conduct of denying the plaintiff's transfer requests. The defendants' roles in the decision making process is supported by their own affidavits in which they alleged that they denied his transfer because of the problems they had had with Bodiford when he originally was employed with the Game and Fish Division. Their roles as the decision makers clearly bring the defendants

within the scope of the EEOC investigation and their identity of interest with the ADCNR satisfies the intention that the defendants have notice of the charge. Accordingly, the defendants' argument that the State of Alabama, Martin, Grimsley, Kelley, and Cosby be dismissed because they were not named in the EEOC charge is without merit.

■ Finally, the defendants contend that Martin, Grimsley, Kelley, and Cosby should be dismissed in their individual capacity under Title VII (Count 6) and Title I and Title II of the ADA (Count 1 and 2) because none are "employers" under Title VII or a "covered entity" under Title I and Title II of the ADA. The law is clearly established in the Eleventh Circuit that "[i]ndividual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *see Roberts v. Houston County Bd. of Educ.,* 819 F.Supp. 1019, 1029 (M.D.Ala.1993). In fact, the plaintiff seems to concede this point by contending that the complaint alleges that the individual defendants are liable "under Title VII and Title I of the ADA ... **in their capacity as agents of the State of Alabama and the Department of Conservation.**" [Pl.s Br. in Opp'n to Defs' Mot. for Summ.J. at 31–32 (emphasis added) ]. Therefore, summary judgment is due to be granted in favor of the individual defendants in their individual capacities.

■ However, summary judgment is not due to be granted for the individual defendants in the official capacity. "Covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2) (1993). The term "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees ..., **and any agent of such person,...**" 42 U.S.C. § 12111(5)(a) (1993) (emphasis added). In their official capacities, the individual defendants were agents of

---

**4.** The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

ADCNR. Accordingly, summary judgment is due to be denied against the individual defendants in their official capacities.

## B. § 1983 (Counts 4, 5, and 7)

### 1. § 504 of the Rehabilitation Act (Count 4)

■ The defendants contend that summary judgment is due to be granted on Count 4 because a § 1983 action cannot be based on the Rehabilitation Act. The defendants have failed to make any argument in support of this statement, they simply point to *Kraft v. Memorial Medical Ctr.*, 807 F.Supp. 785 (S.D.Ga.1992). In *Kraft*, the court stated that "there is authority in the Eleventh Circuit for the proposition that a § 1983 'laws' claim may not be based on the Rehabilitation Act." *Kraft*, 807 F.Supp. at 787. In support of this statement, the court analyzed *Manecke v. School Bd. of Pinellas County*, 553 F.Supp. 787 (M.D.Fla.1982), *aff'd in part and rev'd in part*, 762 F.2d 912 (11th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).

In *Manecke*, the court found that § 504 of the Rehabilitation Act provided comprehensive remedies which are exclusive in that it only provides for equitable relief. Thus, the court concluded that to allow damage claims under Section 1983 "would circumvent the Court's ruling and the Court's determinations of Congress' intent upon which that ruling is based." *Manecke*, 553 F.Supp. at 791. The court therefore held that the plaintiffs could not assert a claim for damages under § 1983 if based on § 504 of the Rehabilitation Act. On appeal, the Eleventh Circuit affirmed the district court's dismissal of the plaintiffs' claim based on the Rehabilitation Act but on different grounds. The court of appeals simply found that the plaintiffs had failed to allege a violation under § 504 and did not address the district court's ruling that a § 1983 "laws" claim could not based on § 504 of the Rehabilitation Act.

The *Kraft* court thus reasoned that "[a]rguably, in the Eleventh Circuit, the Rehabilitation Act may not be the basis of a § 1983 'laws' action." *Kraft*, 807 F.Supp. at 787. However, the *Kraft* court then declined to resolve the issue, first, because the defendant neither raised the issue nor carried its burden "to demonstrate that Congress has expressly withdrawn the § 1983 remedy...." *Id.* Second, the court declined to decide the issue because summary judgment on the § 1983 claim was granted on other grounds.

Though there is authority in the Eleventh Circuit for the proposition that a § 1983 "laws" claim may not be based on § 504, the court notes that there is also authority in the Eleventh Circuit for the opposite conclusion. In *Shuttleworth v. Broward County*, 639 F.Supp. 654 (S.D.Fla.1986), the court held that "the plaintiff may assert claims under both the Rehabilitation Act § 504 and 42 U.S.C. § 1983." *Shuttleworth*, 639 F.Supp. at 660. The court noted that the Eleventh Circuit had not had the occasion to deal directly with the issue of whether § 504 precludes a claim under § 1983. However, the court looked at other circuits for guidance on the issue. The court noted that recent opinions from other circuits suggested that claims may be brought under both statutes at the same time. *Moore v. Warwick Public School Dist. No. 29*, 794 F.2d 322 (8th Cir. 1986); *Lutz v. Weld County School Dist. No. 6*, 784 F.2d 340 (10th Cir.1986); *Duran v. Tampa*, 451 F.Supp. 954 (M.D.Fla.1978). The court then concluded that the plaintiff may assert claims under both § 504 and § 1983.

The court in *Christopher N. v. McDaniel*, 569 F.Supp. 291 (N.D.Ga.1983), in dictum, stated that it was "inclined to rule that a claim under § 1983 is generally sustainable in conjunction with Section 504." *Christopher N.*, 569 F.Supp. at 298. However, the court concluded that the plaintiff had not clearly established a claim under § 1983.

The weight of authority would appear to be in favor of allowing a § 1983 action based on § 504 of the Rehabilitation Act. Considering the authority on point and since the defendants have failed to carry their burden of demonstrating "that Congress has expressly withdrawn the § 1983 remedy" on action based on § 504, the court finds that the plaintiff may maintain his § 1983 action. *See Kraft*, 807 F.Supp. at 787 (citing *Golden State Transit Corp. v. City of Los Angeles*,

493 U.S. 103, 107, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989)); *Shuttleworth,* 639 F.Supp. 654; *Christopher N.,* 569 F.Supp. 291. Accordingly, summary judgment is due to be denied on Count 4.

### 2. Fourteenth Amendment (Count 5)

■ Defendants next assert that summary judgment is due to be granted on the plaintiff's § 1983 action based on the Fourteenth Amendment because the plaintiff has failed to identify a specific liberty or property interest of which he was deprived. The plaintiff contends that, first, he has a protectible property interest in his job. Second, the plaintiff asserts that "the right to be classified according to [one's] abilities is a protected property interest." [Pl.'s Br. in Opp'n to Mot. for Summ.J. at 40].

"Transfers and reassignments have generally not been held to implicate a property interest." *Maples v. Martin,* 858 F.2d 1546, 1550 (11th Cir.1988). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

> It is well settled that an interest attains the status of "property" by virtue of the fact that it has been initially recognized and protected by federal or state rules of law. It is also well established that a mutually recognizable entitlement will receive constitutional protection.

*Brown v. Ledbetter,* 569 F.Supp. 170, 172 (N.D.Ga.1983) (citations omitted).

Each of the cases cited by the plaintiff in support of his argument involve situations in which the court found a property interest in employment. *Peterson v. Atlanta Hous. Auth.,* 998 F.2d 904 (11th Cir.1993) (holding that an employee had a property interest in employment that could not be taken away without due process based on provisions of an employment manual conferring property interest); *Winkler v. DeKalb County,* 648 F.2d 411 (5th Cir. Unit B 1981) (holding that an engineer had a protectible property interest in his transfer where the county code

established a reasonable expectation that an employee will not be demoted to a position of vastly diminished responsibilities without cause); *Brown v. Ledbetter,* 569 F.Supp. 170 (N.D.Ga.1983) (finding that a state statute and rules and regulations of State Personnel Board created a protectible property interest in that an employee had a reasonable expectation that his position would be properly classified). Though the court in these cases found certain property interests in employment, their findings were based on a state law, rule or regulation which created the specific property interest. Bodiford has failed to point to any state law, rule or regulation which would create a property interest in his "right to be classified according to his abilities...." He simply makes an affirmative assertion that such a right exists and cites these cases in support of his assertion. Without any evidence of a state law, rule or regulation of the ADCNR that would create a property interest in a right to be transferred, the court finds that summary judgment is due to granted against the plaintiff on his § 1983 action based on the Fourteenth Amendment.

### 3. Absolute and Qualified Immunity

■ First, both parties agree that defendants State of Alabama and ADCNR are entitled to absolute immunity under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, summary judgment is due to granted for the State of Alabama and ADCNR for the remaining § 1983 actions, i.e. Counts 4 and 7.

■ Next, the defendants contend that the individual defendants in their official capacities are immune from suit in the § 1983 actions because they are not "persons" within the meaning of § 1983. This is partially true. The Supreme Court in *Will* held that state officials sued in their official capacities are immune from suit under § 1983 for damages since such suits were actually suits against the state. *Will,* 491 U.S. at 70–71, 109 S.Ct. at 2312 (emphasis added). However, the Court noted that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under

§ 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10 (citing *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) (emphasis added)). In the complaint, the plaintiff seeks injunctive relief against the defendants. Accordingly, the court finds that the individual defendants are immune from suit in their official capacities for any claim of money damages under § 1983. However, the court finds that the defendants are not immune from suit in their official capacities for plaintiff's claims of prospective relief.

■ Finally, the individual defendants argue that they are entitled to qualified immunity in their individual capacities under § 1983.

Qualified immunity is available to "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727[,] 2738, 73 L.Ed.2d 396 (1982). "[T]he relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990).

In determining whether the doctrine of qualified immunity is applicable . . ., we must consider two questions: first, whether the laws allegedly violated by [the individual defendants] were clearly established at the time [the defendants] acted, *Stewart,* 908 F.2d at 1503; *Rich [v. Dollar],* 841 F.2d [1558] at 1564 [(11th Cir.1988)]; and second, whether the [plaintiff] presented evidence sufficient to create a genuine issue of fact as to whether [the individuals defendants] engaged in conduct violative of that clearly established law. *Stewart,* 908 F.2d at 1503; *Bennett v. Parker,* 898 F.2d 1530, 1532–34 (11th Cir.1990), *cert. denied,*

[498] U.S. [1103], 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). We review the facts in the light most favorable to the nonmoving party. *Goddard v. Urrea,* 847 F.2d 765,.767 (11th Cir.1988).

*Yeldell v. Cooper Green Hosp.,* 956 F.2d 1056, 1064 (11th Cir.1992).

The first question that must be answered is whether the laws that the defendants allegedly violated were clearly established at the time of the defendants' conduct. The appropriate inquiry is fact-specific. "An official will be immune from liability if the applicable law was unclear or if a reasonable officer could have believed that his actions were lawful in light of the clearly established law and the information possessed by the officer." *McDaniel v. Woodard,* 886 F.2d 311, 314 (11th Cir.1989). § 504 of the Rehabilitation Act of 1973 and the First Amendment, which are the basis of the plaintiff's remaining § 1983 actions, were clearly established at the time of the alleged violation. Though the defendants argue that the § 1983 actions should be dismissed because "the ADA was not even in effect in 1991," ADA is not the basis for the plaintiff's § 1983 actions. [Defs.' Br. in Supp. of Mot. for Summ.J. at 9]. Therefore, defendants' argument must fail.

The defendants also assert that they are entitled to qualified immunity because their denials of the plaintiff's transfer requests were based "purely on legitimate, business reasons (i.e. Kelley knew of the many problems the division had had with Bodiford when he worked there from 1977 to 1989) which had nothing to do with any alleged 'disability.'" [Defs.' Br. in Supp. of Mot. for Summ.J. at 9]. Therefore, the defendants conclude that a reasonable person would have believed their actions were lawful in light of the clearly established law, and, thus, they are entitled to qualified immunity. The plaintiff countered with documentary evidence in the form of letters from the defendants which indicate the reason for the denials of plaintiff's transfer requests was his physical disability. In his affidavit, the plaintiff reiterates that the defendants told him he was not being transferred because of his

disability and because he attended church on Sundays.

The defendants would ask the court, given their version of the facts, to find that they reasonably believed that the denials of plaintiff's transfer requests were lawful in light of the clearly established law. However, this is not the proper test. Under qualified immunity, the court must determine whether, in examining the facts in a light most favorable to the plaintiff, the defendants' failure to transfer the plaintiff was lawful in light of the clearly established law. The defendants have failed to address this issue under the appropriate standard.

■ Nevertheless, qualified immunity is still due to be denied. The test to determine qualified immunity requires a second question: whether the plaintiff presented evidence sufficient to create a genuine issue of fact as to whether the defendants engaged in conduct violative of the clearly established law. The court finds that the plaintiff has presented sufficient evidence, in the form of correspondences and affidavits, which create a genuine issue of fact as to whether or not the defendants engaged in conduct which violates a clearly established law. The defendants allege that they denied the transfer based purely on legitimate, business reasons, i.e. past problems with the plaintiff, while the plaintiff contends the defendants denied his transfer requests because of his disability and his religious practice. Clearly, there exists a genuine issue of fact as to the reason why the plaintiff was not transferred.[5] Therefore, the individual defendants are not entitled to qualified immunity at this stage in the proceedings.

### Conclusion

Accordingly, it is CONSIDERED and ORDERED that defendants Martin, Grimsley, Kelley, and Cosby's motion for summary judgment be and the same is hereby GRANTED as to Counts 1, 2, and 6 in their individual capacities only.

It is further CONSIDERED and ORDERED that the defendants' motion for summary judgment be and the same is hereby GRANTED as to Count 5 because of the plaintiff's failure to allege a protectible property interest.

It is further CONSIDERED and ORDERED that summary judgment be and the same is hereby GRANTED for the defendants State of Alabama and the Alabama Department of Conservation and Natural Resources as to Counts 4 and 7 on the basis of absolute immunity. Further, it is CONSIDERED and ORDERED that summary judgment be and the same is hereby GRANTED as to the defendants Martin, Grimsley, Kelley, and Cosby in their official capacities **only with respect to claims for money damages under § 1983.** It is CONSIDERED and ORDERED that summary judgment be and the same is DENIED with respect to the individual defendants in their official capacities with respect to claims for prospective and injunctive relief.

Finally, it is CONSIDERED and ORDERED that summary judgment be and the same is hereby DENIED as to all remaining issues.

5. The defendants also contend that the plaintiff's disability was reasonably accommodated by his transfer to the position of Boat Theft Investigator. The plaintiff argues that the new position restricted his authority and denied him the opportunity to compete for promotions. Therefore, he asserts that his reassignment did not reasonably accommodate him. Clearly, there is a genuine issue of fact as to whether the plaintiff's reassignment to the position of Boat Theft Investigator is a reasonable accommodation.