**Rachel LEWIS, Plaintiff,**

v.

**BOARD OF TRUSTEES OF ALABAMA STATE UNIVERSITY, Defendant.**

No. CV–94–A–376–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 31, 1995.

David R. Arendall, Montgomery, AL, for plaintiff.

Solomon S. Seay, Jr., Tyrone C. Means, Kenneth L. Thomas, Montgomery, AL, for defendant.

## MEMORANDUM OPINION & ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is now before the court on the Motion to Dismiss Plaintiff's Amended and Re–Stated Complaint filed by Defendant, Alabama State University Board of Trustees ("the Board") on August 22, 1994.

Plaintiff, Rachel Lewis ("Lewis"), filed this action on March 29, 1994 alleging violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. ("the ADA").[1] She seeks equitable relief, back pay, punitive damages, costs and attorneys fees. Lewis has properly invoked this court's federal question jurisdiction. 28 U.S.C. § 1331.

For the reasons stated below, the court finds that the Motion to Dismiss is due to be DENIED.

### II. FACTS & PROCEDURAL HISTORY

In 1988, Lewis began her employment as an assistant librarian at Alabama State University. Lewis suffers from a condition called polycystic kidney disease. This disease causes her pain, sleeplessness, and kidney problems. According to her complaint, Lewis' condition causes her to be tardy for work. She has asked her employer re-peatedly for a change in her work schedule. Lewis' employer has consistently denied these requests. Lewis brought this suit against Alabama State University and its Board of Trustees.

On July 26, 1994, this court issued an order dismissing Alabama State University from the case. In this order, the court directed Lewis to amend her complaint to allege how her filing with the Equal Employment Opportunity Commission ("EEOC") was timely and which specific acts of the Board violate the ADA, including the dates on which such acts occurred. Lewis filed her Amended and Re–Stated Complaint on August 3, 1994. Subsequently, the Board filed a Motion to Dismiss addressed to the Amended Complaint.

After reviewing the submissions on the Motion to Dismiss, the court concluded that the Board was correct in part and thus entitled to dismissal. However, the court allowed Lewis another opportunity to amend her complaint to correct the deficiencies. The court advised the parties that the Board's Motion to Dismiss Plaintiff's Amended and Re–Stated Complaint would be granted unless the complaint is further amended. The court noted that it would determine the merits of the Board's Motion to Dismiss once Lewis' second amendment to the complaint was submitted. On January 10, 1995, Lewis filed her Second Amendment to Complaint.

### III. STANDARD OF REVIEW

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir.1994) (citation omitted); *see also Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not

---

1. The ADA is a federal statute which prohibits discrimination in private employment against those who are disabled, or who are perceived as disabled. 42 U.S.C. § 12102, et seq. The ADA protects individuals who can show that they suffer an impairment that substantially limits a major life activity. 42 U.S.C. § 12112(a). Because the ADA came into effect on July 26, 1992, few courts have addressed ADA issues. "Generally, though, federal courts have applied the settled principles of employment discrimination law to the ADA." *West v. Russell Corp.*, 868 F.Supp. 313, 316–17 (M.D.Ala.1994) (collecting cases).

... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232; *see Powell*, 914 F.2d at 1463. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

## IV. DISCUSSION

The Board bases its Motion to Dismiss on the following arguments: (1) Lewis' claims are barred by her failure to file a timely charge with the EEOC; and (2) Lewis has failed to sufficiently allege that her disability limits one or more of her major life activities and that her disability is a disability covered under the ADA. The court will address each of these contentions in turn.

### 1. Compliance with Timing Requirements

 The crucial question this motion presents is whether Lewis filed a timely charge with the EEOC. In order to be timely, the charge must have been filed within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). Failure to file before this time elapses requires the court to dismiss a subsequent lawsuit as untimely. *See, e.g., Delaware State College v. Ricks*, 449 U.S. 250, 256, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir. 1984).[2]

On March 5, 1993, Lewis filed a charge of discrimination with the EEOC alleging that the most recent or continuing discrimination took place on February 16, 1993. According to the allegations of Lewis' Second Amended Complaint,

Defendant denied Plaintiff's verbal requests for a reasonable accommodation on several occasions after July 26, 1992 and before January 22, 1993. **These verbal requests were made on at least one occasion for each month from July, 1992 through January, 1993.** The requests were made by Plaintiff of her supervisor and of the library director of the Defendant.

Second Amendment to Complaint ¶ 5(e) (emphasis added.) It is clear from these allegations that Lewis requested a reasonable accommodation from her employer after the ADA came into effect on July 26, 1992 and that Lewis' employer denied these requests. The first of Lewis' requests for a schedule change after the enactment was more than 180 days before the date on which Lewis filed a discrimination charge with the EEOC. However, Lewis made subsequent requests less than 180 days before she filed with the EEOC.

Lewis attempts to argue that her employer's denial of her repeated requests for a reasonable accommodation of her condition makes this case one which involves a continuing violation. She contends that where a continuing violation is alleged the filing requirements are satisfied so long as the employee files an EEOC charge within 180 days of at least one discriminatory event. She concludes that her filing was timely because she did file a charge with the EEOC within 180 days of the last refusal by her employer of her request to change her schedule to accommodate her condition.

On the other hand, the Board contends that this is not a continuing violation case. The Board contends that the first refusal of Lewis' request for a schedule change was a discrete discriminatory act which occurred more than 180 days prior to the filing of the EEOC charge and which continues to adversely affect Lewis. The Board notes that Lewis was aware of any discrimination on the basis of her disability long before she filed

**2.** Since the ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964, the EEOC processes ADA charges in the same manner as it processes charges under Title VII, and case law applicable to Title VII cases is applicable to ADA cases. *See,* EEOC Policy Guidance: provisions of the Americans with Disabilities Act of 1990, policy statement No. N915–055, EEOC compliance manual (bna) § N:2011 (August 1990).

with the EEOC, yet she chose not to file until March 5, 1993. The Board observes that if this court treats this case as one involving a continuing violation it will be Lewis' repeated requests for a schedule change which had already been denied her which would create the continuing violation. The Board contends that Lewis should not be able to create a "continuing violation" by her own self-serving, affirmative acts. For these reasons, the Board asks this court to dismiss this suit because Lewis has slept on her rights.

■ The key issue before this court is whether or not this case fits into the narrow exception to strict compliance with the Title VII timing requirements which has come to be known as the continuing violation. As often is the case, it is easier to articulate what is not a continuing violation than it is to describe what is a continuing violation.[3] The Eleventh Circuit has explained that an employee whose employer has committed a discrete act of discrimination more than 180 days prior to the employee's filing of a charge with the EEOC cannot evade the timing requirements of Title VII by simply alleging that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify the past violation. *See, e.g., Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 658 (11th Cir. 1993). Thus, neither continuing effect nor continuing refusal to rectify are continuing violations.

■ Under the Eleventh Circuit's continuing violation doctrine, .

if **a series of discrete acts of discrimination** continues into the statutory filing period, then the cause of action is considered timely filed. To revive the otherwise time-barred claim under the doctrine, however, it must be a part of a pattern or continuing practice out of which the timely-filed incident arose. When an employee files a

timely charge for a discriminatory act, he may recover for previous acts of discrimination which would otherwise be time-barred to the extent that he can meet his burden of proving the existence of a substantial nexus between the acts.

*Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 799–800 (11th Cir.1988) (internal citations and quotations omitted; emphasis added). Thus, an employer who has continuously maintained an illegal employment policy or who has committed a series of discrete acts which amount to a practice of discrimination cannot rely on the 180 day filing requirement to bar his employee's suit unless the employee has waited more than 180 days from the last occurrence of an instance of the implementation of that policy or from one of the series of discrete acts to file with the EEOC. *See, Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992).

■ To the extent that the 180 day timing requirement exists to protect employers from the burden of having to defend against claims arising out of remote managerial decisions, the continuing violation doctrine does not interfere with this underlying policy. *Roberts*, 835 F.2d at 800. The continuing violation doctrine does not exist to give an employee who allowed a legitimate claim to lapse a second chance to file the claim. *Id.* Rather the doctrine applies when the nexus between claims that are timely-filed and those that are time-barred is substantial. *Id.* The *Roberts* court further noted that when a nexus exists between the claims sufficient to support an application of the continuing violation doctrine, the policy concerns about the burdens such claims impose on employers are alleviated. *Id.*

The foregoing authority compels a court conducting the continuing violation analysis to distinguish between "the present consequence of a one time violation, which does

---

**3.** The court notes that the cases involving continuing violations are not all of the same type. Some involve an employer's express, openly-espoused policy that is alleged to be discriminatory. Others involve an employer's covert practice of discrimination over a period of time. In the later case, a plaintiff can only realize that he is a victim of discrimination after a series of acts has occurred, and the limitations period begins to run when the plaintiff gains such insight. *See, e.g., Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, No. 92–4076, 1994 WL 695739, at *3 (7th Cir. Dec. 12, 1994); *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir.1992); *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 120–121 (7th Cir.1982).

not extend the limitations period, and the continuation of the violation into the present which does." *Id.* (internal quotations and citations omitted). *See also, Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir.1993); *Ross,* 980 F.2d at 658; *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980).[4]

In making this distinction, a court examines several factors. These factors include: the subject matter of the discrimination, the frequency of the acts, and the permanence of the decision. *Roberts,* 835 F.2d at 800–801. The *Roberts* decision makes clear that where the allegedly discriminatory incidents are substantially identical and the acts of alleged discrimination are frequent a finding of a continuing violation is more likely. *Id.* The permanence factor weighs facts which demonstrate the employee's ability to appreciate that his rights have been violated and that he should seek relief. The court stated that an employee who knowingly fails to seek relief presents "exactly the sort of claim that Congress intended to bar by the 180–day limitation period." *Id.* at 801. Thus, the presence of facts that indicate that the employee was able to appreciate that the employer was acting in a discriminatory manner suggests that the violation is not of the sort encompassed by the continuing violation doctrine.

In the present case, the fact that Lewis' employer repeatedly denied her requests for schedule changes makes it easier to find that the alleged violation was a continuing one because Lewis' timely claims are related in subject matter to her non-timely claims and because of the frequency of the alleged violations. The Board's repeated refusal to change Lewis' schedule could be characterized as an ongoing policy to discriminate against Lewis on the basis of her disability and a continuing state of non-accommodation of Lewis' disability. The series of denials of the requests can be conceptualized as a series of discriminatory acts which continues into the filing period. This court cannot say that Lewis could prove no set of facts consistent with her allegations which would amount to a continuing violation. Thus, this court is compelled to find that, despite Lewis' failure to file with the EEOC sooner, her claim is not due to be dismissed for failure to comply with the 180 day rule. Lewis' allegations, and facts which may be proven consistent with the allegations, indicate that this case may involve a continuing violation with allegedly discriminatory acts occurring less than 180 days prior to Lewis' filing with the EEOC. To the extent that the Board seeks a dismissal of Lewis' suit for failure to comply with the timing requirements it is due to be DENIED.

Such an application of the continuing violation analysis is supported by persuasive precedent from this district. Confronted with what appears at this stage to be a similar fact pattern, Judge Ira De Ment, of this court, recently held that a plaintiff's repeated requests for an accommodation of his disability were appropriately characterized as a continuing violation. *Bodiford v. Alabama,* 854 F.Supp. 886 (M.D.Ala.1994). In *Bodiford,* an employee who developed a disabling condition which was being aggravated by the physical requirements of his job sought a transfer to a different type department in August 1991. *Bodiford,* 854 F.Supp. at 889. The employer denied this request. In March, June, and August of 1992, the employee made requests for transfers which were denied due to his disabilities. In May 1992, more than 180 days from the date that the employer first denied the employee's request for a transfer, the employee filed with the EEOC. The employee then filed suit seeking recovery under the ADA and other federal laws. *Id.*

The defendants in *Bodiford* argued that they were entitled to summary judgment because the employee had failed to file within 180 days of the first refusal of his transfer request. The employee contended that his claim was for a continuing violation and that the series of denials represented an ongoing policy to discriminate against him. *Id.* at 890. The court found that the defendants

---

**4.** In *Bonner v. City of Prichard, Ala.* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

had presented no evidence which demonstrated that the plaintiff was seeking reconsideration of the original denial. The court found that the evidence demonstrated that the plaintiff requested the transfers as vacancies arose and that the defendants denied the requests because of the plaintiff's disabilities. After noting that the EEOC had found that the evidence established that the defendants' requirement of a pre-offer medical examination and being in good health were per se violations of the ADA, the court held that the employee's claims were not time barred because he had alleged a continuing violation under the ADA "in that there existed a systematic discriminatory policy at [plaintiff's employer] to refuse transfers to the plaintiff due to his physical disability." *Id.* at 891.

The court notes that the *Bodiford* court was presented with a motion for summary judgment with supporting and opposing factual submission. Since the plaintiff here may prove facts consistent with her allegations which would be similar to those in *Bodiford,* the complaint survives a motion to dismiss. The results could be different on motion for summary judgment, depending on the facts placed before the court.

### 2. Major Life Activity

The Board contends that Lewis has failed to sufficiently allege that her disability limits one or more of her major life activities. As this court has previously held in this case, Lewis has sufficiently alleged that she is a person covered by the ADA and that her disability, polycystic kidneys, limits one of her major life activities. To the extent that the Board bases its Motion to Dismiss on this argument it is due to be DENIED.

### V. CONCLUSION

In light of the foregoing authority, the court finds that Lewis' allegations that she filed a timely charge with the EEOC are sufficient to survive the Motion to Dismiss and that the allegations of her Amended Complaint sufficiently state a claim under the ADA. Consequently, the court finds that the Board's Motion to Dismiss is due to be, and hereby is, DENIED. These issues may be revisited on a motion for summary judgment or at trial.