Linda Susan MORTON, Plaintiff,

v.

**GTE NORTH INCORPORATED,**
Defendant.

No. 3:94–CV–0424–P.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 23, 1996.

Nancy DeLeon, Gabriel H. Robles, Robles & Associates, Dallas, TX, for Linda Susan Morton.

Lawrence J. McNamara, Charles W. Rhodes *, David G. Cabrales, Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P., Dallas, TX, Glenda R. Beard, GTE North Incorporated, Irving, TX, for GTE North Incorporated and GTE Service Corporation.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court are:

1) Plaintiff's Motion for Partial Summary Judgment, filed April 6, 1995;

2) Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, filed April 28, 1995;

3) Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, filed March 17, 1995.

4) Defendants' Cross–Motion for Summary Judgment, filed April 28, 1995;

5) Plaintiff's Response to Defendant's Cross–Motion for Summary Judgment, filed May 25, 1995;

6) Defendants' Reply Brief in Support of Defendants' Cross–Motion for Summary Judgment, filed June 9, 1995.

This matter is before the Court on Plaintiff Linda Susan Morton's Motion for Partial Summary Judgment filed April 6, 1995 and Defendants GTE Service Corporation and GTE North Incorporated's Cross–Motion for Summary Judgment filed April 28, 1995. Because Plaintiff has since dismissed its case against Defendant GTE Service Corporation, (Pl.'s First Am. and Supp.Compl.), this Order accordingly addresses these motions from the standpoint of the dispute remaining between Plaintiff and Defendant GTE North.

For the reasons stated, the Court hereby GRANTS Defendant's Motion for Summary Judgment as to all of Plaintiff's claims, and

* Charles W. Rhodes is no longer with Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P., but was at the time of the filing of Defendant's Motion for Summary Judgment.

accordingly DENIES Plaintiff's Motion for Partial Summary Judgment.

### STATEMENT OF FACTS

Plaintiff, Linda Susan Morton, was an employee of different GTE subsidiaries from 1969 until 1993. The most relevant period being from October 1989 through March 1993, during which Plaintiff was employed by Defendant GTE North Incorporated.

Plaintiff has a history of bouts with severe depression that dates back to at least 1985. As a result, during her employment with GTE, she required intermittent medical leave: In early 1989, Plaintiff was hospitalized after attempting suicide. And again in both March 1990 and spring 1991, Plaintiff was hospitalized for depression.

Plaintiff claims that her depression was brought on by increased job stress. She was originally hired by GTE North as a programmer. Subsequently, however, GTE decided to centralize the bulk of its programming efforts, which resulted in GTE removing the programming function from Plaintiff's department at GTE North. Allegedly because of her inability to cope with new nonprogramming responsibilities, Plaintiff's depression escalated.

From early 1990 through early 1992, Plaintiff underwent therapy and took medication to combat the stress. However, the medication allegedly had a negative effect on her long-term memory and caused her physical side effects (i.e., shaking and rocking back and forth while sitting at her desk). These effects exacerbated her stress to the point that it impaired her job performance. By early 1992 Plaintiff was excessively missing work.

Because of these problems, Plaintiff requested, either personally or through her physician, a number of accommodations from GTE. On October 7, 1991, Plaintiff's psychiatrist, Dr. Davinder Dhingra, sent a memorandum to Plaintiff's supervisor, Douglas J. Rounds, stating that Plaintiff was capable of continuing work, but that her condition required that GTE provide her a more "structured work setting." Mr. Rounds sent a copy of the memorandum to the company nurse, Donna Kennedy. Allegedly confused about what Dr. Dhingra meant by the phrase, "structured work setting," Nurse Kennedy sent a letter requesting clarification on October 14, 1991. After receiving no response, Nurse Kennedy resent the letter on October 24, 1991. Dr. Dhingra then responded with another memorandum attempting to clarify what she meant.

Based upon the Court's best determination from the record, the response memo stated that GTE should provide Plaintiff with a more structured work setting, to last for three weeks, by limiting Plaintiff's amount of overtime (i.e., not allowing Plaintiff to work more than a total of forty-eight hours per week). Furthermore, Nurse Kennedy determined from a conversation with Plaintiff that it would be helpful if GTE limited the number of deadline-intensive projects assigned to Plaintiff. For the agreed three weeks, GTE contends that it accommodated both of Plaintiff's requests.

Because Plaintiff continued to have noticeable difficulties at work, Plaintiff's supervisor, Douglas Rounds, sent Plaintiff to see Nurse Kennedy on November 3, 1991. In their meeting, Plaintiff requested that she be transferred to a less stressful position. In response to Plaintiff's request, Nurse Kennedy referred Plaintiff to Holly MacRae, GTE Manager of Employee Relations. In their meeting on November 3, 1991, Ms. MacRae recommended that Plaintiff contact the staffing department to determine the mechanics of applying for a position within GTE. Nothing in the record indicates that Plaintiff ever contacted staffing or ever formally applied for a transfer. On November 4, 1991, Plaintiff informed her supervisor, Douglas Rounds, of her desire for a transfer. Mr. Rounds reviewed with Plaintiff the available jobs, which were posted on GTE's computer bulletin board. Neither Mr. Rounds nor Plaintiff identified a vacant job meeting Plaintiff's criteria (i.e., low stress programming). GTE contends that no such position has ever, nor presently, exists. Moreover, Plaintiff has not provided any evidence apart from argument that such a position existed.

Unfortunately, Plaintiff's mental condition and ability to perform her job continued to

deteriorate. On June 17, 1992, Plaintiff threatened to commit suicide on the GTE premises. This incident triggered the following events, which culminated in Plaintiff's termination: On June 18, 1992, through her physician, Plaintiff requested short-term disability leave (STD), which GTE granted. While on STD, Plaintiff applied for disability benefits with the Social Security Administration and for long-term disability (LTD) benefits under a disability policy that she had purchased from The Travelers insurance company. On December 17, 1992, before receiving approval from either the Social Security Administration or The Travelers, Plaintiff's six-month STD expired. GTE then allowed Plaintiff to immediately take all of her vacation for 1992 and 1993, which effectively extended her leave until February 12, 1993. Having still not received an answer from either the Social Security Administration or The Travelers, GTE placed Plaintiff on a departmental leave in order to maintain Plaintiff's status as an employee for another thirty days or until she received a decision from the Social Security Administration and The Travelers, whichever occurred first. On February 16, 1993, Plaintiff was approved for disability payments from the Social Security Administration to be retroactively effective as of December 17, 1992, when her STD leave expired. On March 4, 1993, The Travelers notified Plaintiff that she had been approved for twelve months of LTD benefits (the maximum amount), also to be retroactively effective as of December 17, 1992. Finally, pursuant to its policy of terminating any employee requiring more than six-months of short-term disability or ninety days of leave for any other purpose, GTE terminated Plaintiff.

Plaintiff contends that she was unaware that qualifying for LTD would result in her termination. She contends that Tom Hausmann, a GTE Senior Benefits Administrator, assured her in November 1992 that she would be able to take a twelve-month LTD leave and be placed in another position upon her return.

Thus, upon receiving an oral release from her physician verifying her ability to return to work, Plaintiff sought reemployment with

GTE in July, August, and November of 1993. Plaintiff never provided GTE with a written release from her physician. Because she had been previously terminated, GTE treated her as an external applicant and refused her request for reassignment. Plaintiff claims that this was the first time that she realized that she had been terminated. Plaintiff alleges that GTE should have treated her as an employee on indefinite leave returning to work for reassignment.

### SUMMARY OF CLAIMS AND DEFENSES

Plaintiff raises three causes of action in her complaint: (1) violation of the ADA, (2) violation of the Texas Commission on Human Rights Act (TCHRA), and (3) breach of contract. With respect to the ADA action, Plaintiff argues that she was a "qualified individual with a disability" as that term is defined in the ADA and that she was summarily terminated, despite her requests for reasonable accommodations, in violation of the ADA. Plaintiff contends that the ADA required GTE to personally notify her of her right to reasonable accommodations and required GTE to assess what accommodations would be reasonable independent of any specific requests. Moreover, Plaintiff argues that the ADA recognizes indefinite unpaid leave followed by subsequent reassignment as a reasonable accommodation and that the ADA required GTE to inform her of such an option.

Given the above, Plaintiff contends that she would have requested an indefinite unpaid leave as an alternative to termination had GTE presented her the option. Because Plaintiff contends that GTE was required under the ADA to provide her an indefinite unpaid leave and reassignment, she moves this Court to grant her partial summary judgment on the issue of liability under the ADA. Plaintiff makes no motion concerning her TCHRA or breach of contract claims.

Defendant GTE North ("GTE") refutes Plaintiff's Motion for Partial Summary Judgment arguing that summary judgment for Defendant is appropriate as to all three of Plaintiff's claims. Regarding the ADA claim, GTE contends that Plaintiff was not a "quali-

fied individual with a disability" under the ADA because that definition requires an employee to have been able to perform, with reasonable accommodation, the job she held or desired. However, GTE argues that because Plaintiff was on STD leave before the ADA went into effect, which continued until Plaintiff went on LTD leave after the ADA went into effect, then she does not have standing under the Act.

Furthermore, Defendant argues in the alternative that even if Plaintiff comes within the ADA, she was not entitled to an indefinite leave of absence. First, GTE contends that no indefinite leave is required because it would not constitute a reasonable accommodation under the ADA as it would place an undue burden on GTE. Second, Defendant contends that the Family and Medical Leave Act of 1993 ("FMLA") manifests Congress' intent that the ADA not require indefinite leave in that the FMLA provisions, which under the rules of statutory construction are to be construed consistently with the ADA, require only twelve workweeks of unpaid leave. Defendant maintains that to construe the ADA to have already required indefinite unpaid leave would make the FMLA twelve-week requirement superfluous. Third, Defendant maintains that Plaintiff was not entitled to indefinite leave because she failed to request such leave from GTE.

Finally, GTE argues that Plaintiff's claim for reassignment should be dismissed because the ADA does not require it to provide such an accommodation. Defendant argues that any duty to reassign, to the extent that it exists, applies only to employees who are qualified individuals with a disability, which Plaintiff was not. Furthermore, Defendant argues that since the ADA is not intended to give persons with a disability preferential treatment, it had no duty to reassign Plaintiff because she was terminated pursuant to a uniformly applied policy.

With respect to Plaintiff's TCHRA claim, both Plaintiff and Defendant agree that courts interpreting TCHRA have relied almost exclusively upon federal authorities and that accordingly TCHRA should be interpreted as coextensive with the ADA. Therefore, Defendant contends summary judgment should be granted in its favor for the same reasons as listed above regarding Plaintiff's ADA claim.

With respect to the Plaintiff's breach of contract claim, Defendant first argues that it should be granted summary judgment because Mr. Hausmann's alleged oral contract with Plaintiff violates the Texas Statute of Frauds. Next, Defendant contends that the alleged contract also fails for lack of consideration, insufficient meeting of the minds, and lack of sufficient clarity to constitute an agreement. Finally, should a contract exist, Defendant argues that the claim of breach should be dismissed because there is no competent summary judgment evidence supporting a violation of the alleged agreement.

## *ANALYSIS*

### I. *The Evidentiary Standard on Motions for Summary Judgment*

■ Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Thomas v. Harris County*, 784 F.2d 648, 651 (5th Cir.1986). All evidence and the inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir.1979). The party defending against a motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

■ Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson,* 477 U.S. at 248–50, 106 S.Ct. at 2510–11; *Abbott v. Equity Group Inc.,* 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements unsupported by evidentiary facts will not suffice to defeat a motion for summary judgment. *Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2d. Cir.1985). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ Finally, the Court has no duty to search the record for triable issues. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 403 (6th Cir.1992). The Court need only rely on the portions of submitted documents to which the nonmoving party directs. *Id.* at 403.

## II. *The Americans With Disabilities Act of 1990*

### A. *Defendant's Objections to Plaintiff's Summary Judgment Evidence*

■ Objections to summary judgment evidence should be ruled upon before a court rules upon the motion itself. *See Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1335 n. 9 (9th Cir.1980). Accordingly, to the extent that the Court relies on evidence to which the Defendant has objected, the Court will rule on the objection prior to considering or disregarding such evidence in deciding Plaintiff's Motion for Partial Summary Judgment. However, to the extent that the Court decides Plaintiff's motion without the necessity of considering other evidence that the Defendant finds objectionable, Defendant's objections to such evidence are OVERRULED AS MOOT.

1. Note that for employers engaged in commerce who have fifteen or more employees, the ADA

### B. *Time Limitations*

#### 1. *Pre–Effective Date Conduct*

■ The Americans With Disabilities Act (ADA) was enacted on July 26, 1990. 1990 U.S.C.C.A.N. 267. For employers engaged in commerce who have twenty-five or more employees, the ADA became effective on July 26, 1992. 42 U.S.C. § 12111(5)(A) (1995).[1] Furthermore, courts are in agreement that the ADA is not to be applied retroactively. *O'Bryant v. City of Midland,* 9 F.3d 421, 422 (5th Cir.1993); *Gonzales v. Garner Food Services, Inc.,* 855 F.Supp. 371, 373 (1994).

■ Given that the ADA should not be applied retroactively, the Defendant objects, on grounds of immateriality, to the Court's consideration of facts alleged by the Plaintiff that occurred prior to July 26, 1992. (Def.'s Resp. to Pl's Motion for Partial Summ.J. at 2–3). Plaintiff contends that such facts are relevant to issues such as Defendant's knowledge of Plaintiff's condition as that condition existed and allegedly affected violations after the effective date. The Court agrees. Accordingly, Defendant's objection is OVERRULED.

■ While a party is not entitled to damages for violations based on facts that occurred prior to the effective date, pre-effective date facts can be relevant regarding post-effective date violations. As stated by the U.S. Supreme Court in *Bazemore v. Friday:*

> A pattern or practice that would have constituted a violation ..., but for the fact that the statute had not yet become effective, became a violation upon [the statute's] effective date, and *to the extent an employer continued to engage in that act or practice,* it is liable under that statute.

478 U.S. 385, 394, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986) (emphasis added); *see also Hazelwood School District et al. v. United States,* 433 U.S. 299, 310 n. 15, 97 S.Ct. 2736, 2742 n. 15, 53 L.Ed.2d 768 ("This is not to say that evidence of pre-Act [Title VII] discrimination can never have any probative force.") Therefore, when pre-effective date

became effective on July 26, 1994. 42 U.S.C. § 12111(5)(A) (1995).

conduct continues past the effect date and thus constitutes a violation after the effective date, that violation is actionable. But, any claim premised on pre-effective date conduct and considered to be a separate pre-effective date violation will not stand.

Some courts have considered the "continuing violation" doctrine (originally set out to revive claims that had lapsed under the applicable statute of limitations, see *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983)) to give life to claims that "accrued" before the effective date of the ADA. *See Bodiford v. State of Alabama, et al.*, 854 F.Supp. 886, 891 & n. 3 (M.D.Ala. 1994). In *Bodiford*, the court allowed the plaintiff's *separate counts* of discriminatory refusal to transfer, even though they occurred before the effective date of the ADA. *Id.*

Distinguish *Bodiford* from the example in *Bazemore*. In *Bazemore*, the Supreme Court chose its words carefully, stating that a pattern of pre-effective date discriminatory conduct "that would have constituted *a violation*" becomes actionable if it continues past the effective date. 478 U.S. 385, 394, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986) (emphasis added). In other words, the pattern of conduct constituted a single violation, which was unactionable before the effective date, but became actionable after the effective date. Following the same line of reasoning, the plaintiff in such a case could only recover damages caused by that portion of the violation occurring after the effective date. On the other hand, in *Bodiford*, the court made it very clear that it was allowing *multiple* and *separate* (but similar, so "continuous") claims to stand even though some of the claims accrued before the effective date. Thus, the plaintiff in *Bodiford* was presumably entitled to damages for the violations occurring before the effective date.

■ This Court finds *Bodiford* unpersuasive, and rather endorses the view that the "continuing violation" doctrine applies only to claims that have lapsed under statutes of limitation, but not to claims based on conduct that was not yet unlawful. *Bishop v. Okida-*

*ta, Inc.*, 864 F.Supp. 416, 422 (D.N.J.1994). As stated in *Bishop*, "The issue is different where, for example, a defendant engages in a 'continuing course of conduct' that extends back beyond the applicable statute of limitations. In such a situation, the defendant may be held liable for acts that occurred outside the statutory period, because the conduct was always unlawful." *Id.* at 422.

■ It is not entirely clear from the Plaintiff's complaint and pleadings whether the Plaintiff intends to pursue damages for separate violations occurring prior to the effective date of the ADA. Thus, to the extent that Plaintiff claims relief for such violations, summary judgment for Defendant is GRANTED.

### 2. *Post–Effective Date Conduct*

■■ In order to properly sue an employer under the ADA, a plaintiff must first file a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and receive a Right to Sue Letter. *Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 597 (E.D.Tex.1994) (citing *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1215 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983)). In general, a plaintiff may sue on only those claims that accrued not more than 180 days prior to the plaintiff's filing of the Charge of Discrimination.[2] *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)1. Furthermore, the scope of a plaintiff's claims is limited by the allegations raised in the Charge of Discrimination. *Slaughter v. Lee*, 1995 WL 66637, at *1 (E.D.La.1995) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970)).

Plaintiff filed her Charge of Discrimination with the EEOC on November 12, 1993, and received her Right to Sue Letter on February 25, 1994. Defendant argues that under the 180–day rule, the Plaintiff is precluded from alleging claims of discrimination that accrued prior to May 16, 1993, which is 180 days prior to Plaintiff's filing. Plaintiff, on the other hand, contends that such claims are viable under the continuing violation doctrine

---

**2.** Note that a 300–day statute of limitations applies to claims in which a plaintiff chose to file

with a comparable state agency. However, such was not the case here.

alluded to above. *See Berry*, 715 F.2d 971, 981 (5th Cir.1983).

Defendant also argues that the scope of Plaintiff's claims under the ADA should be limited to the claim set out in her Charge of Discrimination: that she was discriminatorily denied the option of an unpaid leave with right of reassignment. Plaintiff contends that, under the applicable standard for determining the limitation placed on the scope of her case, all of her claims are appropriate.

However, the Court finds it unnecessary to engage in the *Berry* analysis or to determine whether Plaintiff's claims should be limited, for the Court disposes of these motions on the independent ground that Plaintiff lacks standing to sue under the ADA.

### C. *Arguments, Other Than Standing, Offered in Support of the Parties' Motions*

Each party has alleged a battery of arguments, other than standing, in support of their respective motions. However, again, because the Court disposes of this case on the independent ground that Plaintiff lacks standing to sue under the ADA, the Court finds it unnecessary to address the merits of these arguments. The facts surrounding such arguments will be discussed only to the extent necessary in explaining the Court's ruling on the standing issue.

### D. *Standing Under the ADA: "Qualified Individual With A Disability"*

Title I of the ADA governs actions for employment discrimination against the disabled. It provides, in relevant part, that an employer "shall not discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges." 42 U.S.C. § 12112(a) (1995). However, only an employee considered to be a "qualified individual with a disability" has standing to sue under the ADA. A qualified individual with

a disability is a disabled employee who, with or without reasonable accommodation, can perform the essential functions of the job she holds or desires. 42 U.S.C. § 12111(8) (1995). The plaintiff initially bears the burden of proving that reasonable accommodation is possible, and then the burden shifts to the employer to prove inability to accommodate. *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir.1995). However, when the employer has moved for summary judgment, unrebutted evidence of inability to accommodate is grounds for summary judgment. *Id.* at 1124.

The legislative history of the ADA reveals "that the term 'qualified' refers to whether the individual [was] qualified at the time of the job action in question." *Parker v. Metropolitan Life Ins. Co., et al.*, 875 F.Supp. 1321, 1326 n. 5 (W.D.Tenn.1995) (citing S.Rep. No. 116, 101st Cong., 1st Sess. 26 (1989)). Plaintiff admits "that without accommodation, she was unable to perform an essential function of her job in June of 1992." (Pl.'s Resp. to Def.'s Cross–Motion for Summ.J. at 7). The issue therefore is whether Plaintiff can show that, at any time since July 26, 1992, she has been able to perform a job, with reasonable accommodation, that she has held or desired.

Plaintiff argues that but for the Defendant's failure to reasonably accommodate her, she would have and could today fulfill the essential functions of her job. Plaintiff further contends that Defendant thus failed, in violation of the ADA, to accommodate her by refusing her requests for a transfer or a more structured work setting. Had the Defendant accommodated her, Plaintiff states that she would not have needed STD leave,[3] LTD leave, or benefits from the Social Security Administration or The Travelers. Furthermore, Plaintiff contends that the fact that she applied for and received Social Security and LTD insurance benefits does not preclude her from asserting that she was a qualified individual with a disability. Finally, Plaintiff states that she was unaware that

---

**3.** For ease of discussion, in Section II.D of this order, the Court will collectively refer to the (1) six-months of short term disability leave, (2) ap-

proximately four-weeks of vacation time, and (3) approximately three-weeks of departmental leave taken by Plaintiff as "STD" leave.

taking LTD leave and benefits would result in her termination and that had she been notified, she would have requested an indefinite unpaid leave with the right to reassignment.

In response, Defendant argues that, from the time Plaintiff went on STD leave until the present, Plaintiff was not and still is not a qualified individual with a disability. Defendant argues that Plaintiff has offered insufficient summary judgment proof to establish a genuine issue of material fact as to whether Plaintiff could or can today perform the essential functions of any position at GTE. Defendant argues that this is true because (1) Plaintiff was unable to perform, with reasonable accommodations, the essential functions of her job; (2) Plaintiff has offered no competent summary judgment evidence that any position has existed, or exists today, which Plaintiff could perform; and (3) Plaintiff made previous representations that she was and is totally disabled. The Court agrees and accordingly holds that the Plaintiff has failed to raise a genuine issue of material fact as to whether she has standing to sue under the ADA.

### 1. *Plaintiff was unable to perform, with reasonable accommodations, the essential functions of her job*

■ On July 26, 1992, the effective date of the ADA, Plaintiff was on STD leave from GTE. Under GTE policy, during her STD leave Plaintiff was still considered an employee for all purposes and therefore has standing under the ADA to sue for violations occurring during that time if she can prove that, had she been reasonably accommodated, she could have performed the essential duties of her job. Plaintiff claims that if GTE had accommodated her by giving her a transfer to a less stressful position, or by providing a more structured setting for her current job, then she could have fulfilled the essential duties of her job. Even though

Plaintiff did not request such accommodations while on STD, she argues that Defendant nevertheless violated her rights under ADA because it did not initiate contact with Plaintiff about how she could be accommodated and thus failed to discover or offer her these options.

■ As Defendant points out, what this argument ignores is that GTE had provided Plaintiff reasonable accommodations in response to those very requests prior to Plaintiff taking STD leave. In response to Plaintiff's requests for a transfer, GTE Manager of Human Relations, Holly MacRae, testifies that she directed Plaintiff to the staffing department so that she could determine the mechanics of applying for a transfer. (MacRae Dep. at 38–40). Furthermore, Plaintiff and her supervisor, Doug Rounds, together evaluated the positions available at the time of her request. Rounds testifies that neither he nor Plaintiff found any position that Plaintiff would accept and could successfully perform. (Rounds Dep. at 130–31). And Plaintiff herself admits that she was unable to find a job that she could perform.[4] In listing possible reasonable accommodations, the ADA specifically provides for "reassignment to a *vacant* position." 42 U.S.C. § 12111(9)(B) (1995). Therefore, because no suitable, vacant position was available, GTE was under no duty to grant Plaintiff a transfer.

With respect to Plaintiff's and her physician's requests for a more structured work setting, GTE reasonably accommodated Plaintiff. As set out in the Statement of Facts, Dr. Dhingra's original memorandum did not specifically state what she meant by "structured work setting." Not until after two requests from GTE did Dr. Dhingra send a second memorandum, intended to clarify the phrase. However, as far as can be determined from the record, and Plaintiff does not offer any further proof,[5] the second

---

**4.** "Q. When you were still employed by GTE, had you identified, let's say in the first six months of 1992, any positions within GTE North or within TELOPS [computer bulletin board] that you could successfully perform."

"A. No. That's why I was asking for help in locating a job." (Morton Dep. at 51–52).

Note, as stated in the text, that GTE did help Plaintiff in trying to find another job, yet neither Plaintiff nor GTE found a suitable position.

**5.** Plaintiff's only response to Defendant's charge that Dr. Dhingra's request was too vague was that "Dr. Dhingra sent *another* letter explaining what type of structured work setting would ac-

memorandum stated only that Plaintiff should work a limited amount of overtime for a period of three weeks and that the structured setting should last for three weeks (again, Dr. Dhingra offered no further explanation of "structured setting"). (Pl.'s Mot. for Partial Summ.J. Ex. G at GTEN 00002). GTE was able to determine from a conversation with Plaintiff that reducing the number of projects with last-minute deadlines would help. Defendant contends, and supports with deposition testimony, that it accommodated Plaintiff's requests for the agreed three weeks by reducing her overtime and diverting from her stressful and deadline-intensive projects. (Def.'s Resp. to Pl.'s Mot. for Partial Summ.J. at 7). Plaintiff's only response regarding the structured-work-setting request was that "attempts by GTE, *if any*, to accommodate Plaintiff occurred prior to the effective date of the ADA" and that GTE had a responsibility to reassess her situation before terminating her once the ADA went into effect. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Partial Summ.J. at 11–12).

■ While these accommodations were provided before the effective date of the ADA, that does not diminish there relevance to this inquiry. Because Defendant had no duty to accommodate Plaintiff prior to the effective date, the fact that they did so is no less relevant than if the accommodation had occurred after the effective date. The purpose of the effective date was to allow employers to adjust their operations to the new requirements,[6] not to penalize companies who got an early start.

Plaintiff's contention that GTE failed to "initiate an informal, interactive process," (Pl.'s Br. in Supp. of Mot. for Partial Summ.J. at 11 (citing 29 C.F.R. 1630.2(*o*)(3)), in order to reassess Plaintiff's condition is unpersuasive. Plaintiff's brief itself states that the necessity of such contact is to determine appropriate reasonable accommodations. (Pl.'s Br. in Supp. of Partial Summ.J. at 11). On the facts of this case, there was no need for GTE to initiate further contact because an interactive process was already ongoing between GTE and Plaintiff (recall the communications regarding accommodations before the effective date of the ADA). GTE and Plaintiff were already engaged in a dialogue regarding accommodations, which GTE met to the extent possible and requested.

■ By June 1992, Plaintiff was unable to perform her job, and as another accommodation, Plaintiff requested, and GTE granted, a generous STD leave. Plaintiff argues that GTE should have accommodated Plaintiff further during her STD leave, specifically with a transfer or a more structured work setting, even though she never requested either. The Court finds that GTE was reasonable to wait and see if the STD accommodation was successful before offering Plaintiff other accommodations (especially given that Plaintiff did not request other accommodations and the previous accommodations had not worked). Even if the ADA does not require an employee to affirmatively request an accommodation, "the employee cannot expect the employer to read [her] mind and know [she] secretly wanted a particular accommodation and sue the employer for not providing it." *Schmidt v. Safeway Inc.*, 864 F.Supp. 991, 997 (D.Oregon 1994). Furthermore, given Plaintiff's history, it would not have been reasonable for GTE to grant a transfer or offer a restructured job during Plaintiff's STD without a release from Plaintiff's doctor.[7]

commodate Morton's disability." (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Partial Summ.J. at 10). Plaintiff did not provide the Court with a copy of the second letter and did not expound on how that letter clarified the ambiguity.

6. *See* 1990 U.S.C.C.A.N. 602 (In his signing statement to the ADA, President Bush said, "These phase in periods and effective dates will permit adequate time for businesses to become acquain-

ted with the ADA's requirements and to take the necessary steps to achieve compliance.").

7. Plaintiff had recently threatened to commit suicide on GTE property, endangering her own and others' lives. In Plaintiff's application for STD, Dr. Dhingra certified Plaintiff as unable to perform her job for an undetermined length of time, and the doctor never supplied GTE with a release during Plaintiff's STD.

### 2. Plaintiff has offered no competent summary judgment evidence that any position existed, or exists today, which Plaintiff could perform.

Plaintiff has provided conflicting evidence as to what type of job, whether attained through a transfer or restructuring, that Plaintiff could or would have been able to successfully perform. By testimony of Plaintiff's own physician, Plaintiff would not have been and is not today able to perform any job involving computers, but rather is more suited for an entry-level clerical position. (Dhingra Dep. at 13, 54, 58–61). The Plaintiff, on the other hand, testified that at the time of her requests she was seeking another programmer position and that today she would accept reinstatement only if to a programmer position. (Morton Dep. at 24, 51, 166).

Furthermore, Plaintiff has provided no competent summary judgment evidence that a position existed, or exists today, which Plaintiff could, with or without reasonable accommodation, perform the essential functions. Recall that the ADA states that reassignment may be a reasonable accommodation if a vacant position is available. 42 U.S.C. § 12111(9)(B) (1995). Thus Plaintiff has the burden of raising a fact issue as to vacancy of an acceptable position. Plaintiff has offered only (1) the conflicting conclusory statements of herself and her physician and (2) an undecipherable computer printout of jobs that GTE filled "during the period of July 1, 1993 through December 31, 1993." (Pl.'s Resp. to Def.'s Cross–Mot. for Summ.J. at 2–3). Neither piece of evidence is sufficient to raise a genuine issue of material fact.

Conclusory statements unsupported by evidentiary facts will not defeat a motion for summary judgment. *Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2d Cir.1985). Therefore, the conflicting statements clearly do not create a fact issue. And less obvious, but nonetheless true, the undecipherable nature of the computer printout makes it a conclusory statement as well. A perusing of the printout quickly reveals that it might as well have been written in hieroglyphics. The printout is composed of abbreviated titles and codes that only a person familiar with GTE and its jargon could understand. Moreover, even if one could decipher the proper titles of the jobs, the Plaintiff has provided the Court with no descriptions of what the various jobs entail. Thus, a juror would be left guessing whether a job that the Plaintiff could perform ever existed; such evidence will not defeat a motion for summary judgment. *Cf. Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989) ("[A] party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on ... conjecture."). Nor does it matter that the job descriptions are in the control of the Defendant, given that the parties have had a full opportunity for discovery. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 3. Plaintiff made previous representations that she was and is totally disabled

Defendant claims that "[b]eing on disability precludes any claim as a matter of law that an individual is protected by the ADA." (Def.'s Br. in Supp. of Cross–Motion for Summ.J. at 8). Defendant argues that Plaintiff should be estopped from claiming to be a qualified individual with a disability given the representations that she has made to GTE, the Social Security Administration, and The Travelers insurance company in order to receive STD and LTD benefits. Plaintiff responds that being on disability is not dispositive of whether she has standing, but only a factor to be considered. Plaintiff argues that she has provided enough evidence of her standing to create a genuine issue of material fact. The Court agrees with Plaintiff that being on disability is not dispositive, but finds in this case that Plaintiff has failed to raise a fact question.

Defendant relies primarily upon *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 557 (D.Kan.1995) in support of its estoppel theory. In *Garcia–Paz,* the court held that the Plaintiff was estopped from claiming she was a qualified individual with a disability because she had represented herself as totally disabled in order to receive both Social Security Benefits and LTD insurance benefits. *Garcia–Paz,* 873 F.Supp. at 555. The

Court, however, declines to follow the *Garcia–Paz* reasoning.

██ The *Garcia–Paz* strict estoppel approach finds no support in the case law. While Defendant argues that other courts have utilized the *Garcia–Paz* reasoning, that is only partially true. Those courts reached the same ultimate conclusion, but their reasoning did not follow a strict estoppel approach (i.e., the courts did not find it dispositive that the plaintiff had made representations of disability in order to receive benefits). Rather, some of the courts considered such representations as factors to be weighed in determining whether a fact question existed. *See Reigel v. Kaiser Found. Health Plan*, 859 F.Supp. 963, 970 (E.D.N.C.1994) (finding plaintiff lacked standing based on "the totality of the evidence"); *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 581–584 (1st Cir.1992) (finding plaintiff lacked standing, under Massachusetts disability law, because of her representations and because the record was "fatally bereft" of any other evidence that she could perform her job). Others disposed of the case on grounds independent of the representations. *See Beauford v. Father Flanagan's Boy's Home*, 831 F.2d 768, 771 (8th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988) (finding plaintiff lacked standing under the Rehabilitation Act[8] based on the plaintiff's unequivocal admission to the court that she was unable to perform her job); *Parker v. Metropolitan Life Ins. Co.*, 875 F.Supp. 1321, 1326 n. 5 (W.D.Tenn.1995) (finding plaintiff lacked standing because she was not disabled at the time of the alleged discrimination).

Furthermore, other courts, cited by Plaintiff, have held that a genuine issue existed despite the plaintiff's representations of disability. *See Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir.1992); *Smith v. Dovenmuehle Mortgage, Inc.*, 859 F.Supp. 1138, 1143 (N.D.Ill.1994). Again, these courts considered the plaintiff's representations only as a factor to consider. In *Overton* the Seventh Circuit explained that a finding of disability by the Social Security Administration is not dispositive as to the standing issue under the Rehabilitation Act.[9] As stated in *Overton*, "[T]he determination of disability may be relevant evidence of the severity of [plaintiff's] handicap, but it can hardly be construed as a judgment that [plaintiff] could not do his job." *Overton*, 977 F.2d at 1196. Relying on *Overton*, the *Smith* court came to the same conclusion regarding the ADA. *Smith*, 859 F.Supp. at 1141.

Considering the facts in this case, Plaintiff has failed to raise a fact issue regarding her standing. In her June 1992 application for STD leave, Plaintiff, through her physician Dr. Dhingra, represented to GTE that she would be unable to fulfill the essential functions of her job for an indefinite period. (Kennedy Dep. Ex. 1). Furthermore, while its not clear who made the notation, it was noted on the STD application that Plaintiff intended to apply for LTD benefits on July 14, 1992, which was prior to the effective date of the ADA. (Kennedy Dep. Ex. 1). In her application for LTD benefits, Plaintiff certified that she was "totally disabled," which under The Travelers policy means "unable (as determined by the Company) to perform the normal duties of his regular occupation for any employer or an alternate occupation with similar earnings potential." (Pl.'s Resp. to First Req. for Produc. No. 8). Plaintiff was approved for LTD insurance benefits on March 4, 1993 to be retroactively effective as of December 17, 1992. (Pl.'s Resp. to First Req. for Produc. No. 8). Finally, Plaintiff certified her disability to the Social Security Administration, and based on such certification, was approved on February 16, 1993 for three years of benefits to be retroactively effective as of December 17, 1992; Plaintiff still receives these benefits today. (Morton Dep. at 20–22).

Thus, Plaintiff has continuously represented her disability as preventing her from performing her job since June 1992. Plaintiff

---

**8.** Note that the ADA is to be construed as consistent with the Rehabilitation Act of 1973. *See* 42 U.S.C. § 12117(b). Thus, the *Beauford* analysis applies with equal force to the ADA.

**9.** Note again that the ADA is to be construed as consistent with the Rehabilitation Act of 1973. *See* 42 U.S.C. § 12117(b). Thus, the *Overton* analysis applies with equal force to the ADA.

claims that she was nevertheless a qualified individual with a disability because she could have performed her job had GTE reasonably accommodated her. However, under the circumstances, no reasonable juror could find that the ADA required further accommodations from GTE.

Plaintiff further argues that the *Overton* and *Smith* cases are factually similar to this case and therefore demand that summary judgment be denied. However, *Overton* and *Smith* are distinguishable from the present case. In *Overton,* the plaintiff had applied for Social Security benefits prior to attaining the job in question, and he was only receiving such payments on a trial basis. 977 F.2d at 1192. Moreover, the plaintiff in *Overton* produced evidence that he could perform the essential functions of his job at the time he was terminated. *Id.* at 1196. In *Smith,* although the plaintiff was receiving Social Security benefits, he showed his ability to perform his former job with evidence that he had subsequently secured a similar job with another employer.[10] In contrast, Plaintiff in this case has continuously represented her inability to perform her job duties and has offered no competent summary judgment evidence to show otherwise.

■ Therefore, having failed to raise a fact question as to whether she could or would perform the essential functions of any job at GTE, the Court holds that, as a matter of law, Plaintiff was not a qualified individual with a disability at the time the ADA went into effect or at anytime thereafter. Thus, while it was certainly careless and insensitive to terminate Plaintiff without notice, because

Plaintiff does not have standing under the ADA to bring a suit for wrongful termination, the claim will fail. For the same reasons, Plaintiff's claims of discriminatory denial of indefinite leave and reassignment must also fail.[11] Accordingly, the Court GRANTS Defendant's Cross–Motion for Summary Judgment on all of Plaintiff's ADA claims and DENIES Plaintiff's Motion for Partial Summary Judgment.

### III. The Texas Commission on Human Rights Act

■ As the parties have correctly agreed, the majority of courts construing the Texas Commission on Human Rights Act (TCHRA) have relied almost exclusively on federal authorities. *See, e.g., Fogle v. Southwestern Bell Telephone Co.,* 800 F.Supp. 495, 498 (W.D.Tex.1992); *Stinnett v. Williamson County Sheriff's Dep't,* 858 S.W.2d 573, 576 (Tex.App.—Austin 1993, writ denied); *Benavides v. Moore,* 848 S.W.2d 190, 193 (Tex. App.—Corpus Christi 1993, writ denied); *Eckerdt v. Frostex Foods, Inc.,* 802 S.W.2d 70, 72 (Tex.App.—Austin 1990, no writ). Therefore, TCHRA can be interpreted as coextensive with the ADA. Accordingly, for the same reasons stated above regarding Plaintiff's ADA claims, this Court GRANTS Defendant's Cross–Motion for Summary Judgment on Plaintiff's TCHRA claims.

### IV. The Contract Claims

It has come to the Court's attention that Plaintiff no longer intends to pursue its contract claim. Accordingly, the Court

---

10. Defendant in this case also argues that *"Smith* did not involve representations for LTD, only social security." (Def.'s Reply Br. in Supp. of Cross–Motion for Summ.J. at 7). However, the statement of facts in *Smith* indicate that plaintiff in fact did apply for, but was denied, benefits under his employer's disability policy, which were likely similar to the LTD benefits Plaintiff applied for in our case. *See Smith,* 859 F.Supp. at 1139.

11. This court doubts that indefinite leave could ever be demanded as a reasonable accommodation. However, even assuming the ADA does recognize such an accommodation, Defendant only had a duty to provide the accommodation if Plaintiff can show that with it she could have performed the job she desired. As demonstrated

above, Plaintiff has failed to meet that burden. Plaintiff offers no competent summary judgment evidence of any accommodation (other than more leave) that would allow Plaintiff to successfully perform her reassignment. Insofar as Plaintiff continues to receive Social Security benefits, she continues to represent to the Social Security Administration that she is permanently unable to work. And, finally, Plaintiff offers no competent summary judgment evidence that a suitable, vacant position existed at the time that she sought reassignment, or that such a position exists today. Thus, even with the benefit of an indefinite leave, Plaintiff has failed to raise a genuine issue of material fact as to whether she could return to work at the end of the leave.

GRANTS Defendant's Cross–Motion for Summary Judgment on Plaintiff's contract claims.

### V. *Conclusion*

Having considered the arguments, authorities, and record in this matter, the Court finds that, as a matter of law, Plaintiff lacks standing to sue under the ADA and TCHRA. Furthermore, because the Plaintiff no longer intends to pursue its contract claims, the Court finds such claims moot. Accordingly, the Court hereby GRANTS Defendant's Cross–Motion for Summary Judgment on all of Plaintiff's claims and DENIES Plaintiff's Motion for Partial Summary Judgment.

SO ORDERED.