**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-10192

_____

LINDA SUSAN MORTON,

Plaintiff-Appellant,

VERSUS

GTE SERVICE CORPORATION, ET AL.,

Defendants,

GTE NORTH INCORPORATED,

Defendant - Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
(3:94-CV-424-P)

_____

April 9, 1997

Before JOLLY, JONES and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:[*]

Plaintiff-Appellant, Linda Susan Morton ("Morton") appeals

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

from a summary judgment for her former employer GTE North Incorporated ("GTE") on her claims brought pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Texas Commission on Human Rights Act, TEX. LABOR CODE ANN. ch. 21 (Supp. 1996) ("TCHRA").  We affirm.

FACTS

The summary judgment evidence, considered in the light most favorable to Morton, established the following facts.  Morton worked for GTE[1] for over twenty years, moving up from a clerical position to a computer programmer.  She suffered from psychiatric illness, diagnosed as major depression and bi-polar disorder, for approximately five years prior to her termination.

Morton was hospitalized in early 1989, in March of 1990 and in the Spring of 1991 for depression.  In the Fall of 1991 Morton's psychiatrist wrote two letters to GTE and spoke with Morton's supervisor two or three times, communicating that Morton needed to reduce her level of stress at work.  In response, GTE limited her overtime for a three week period, restructured her job duties and transferred "pressure" projects to other employees.  In February 1992, GTE granted Morton another leave of absence for hospitalization because she was suicidal.  After her return from this leave with a complete release, Morton continued to have performance and absenteeism problems.  The psychiatrist had a conversation with GTE's nurse suggesting that Morton needed reduced interaction with people and that GTE delay disciplining Morton for excessive absenteeism for two to three weeks.  In June 1992, Morton again threatened suicide.  At her doctor's recommendation, Morton

_____

[1]Morton was an employee of different GTE subsidiaries from 1969 until 1993.  From October 1989 through March 1993, she was employed by GTE North Incorporated.

took two weeks off work, which was extended into a six month paid short-term disability leave. The ADA became effective during her short-term disability leave, on July 26, 1992.

During her short-term disability leave, Morton applied for Social Security disability benefits and long-term disability benefits through a private insurance policy. At the end of Morton's short-term disability leave, neither the Social Security Administration or the private insurer had approved her requests for benefits. GTE permitted Morton to use the remainder of her 1992 and 1993 vacation time to extend her paid leave until February 12, 1993, at which time her disability benefits had still not been approved. GTE then placed Morton on a thirty day departmental leave of absence so that her medical and other insurance would not lapse. During that thirty day period, she was approved for Social Security and private insurance disability benefits. Morton was terminated as a GTE employee in March 1993.

In July and August 1993, Morton wrote three letters to GTE, each time noting that she was "completely recovered"[2] and "requesting that GTE make reasonable accommodation to reassign me to a vacant position within the organization as outlined in the [ADA]." In September 1993, GTE advised Morton that they were not "currently seeking external candidates with [her] background and credentials." Morton attached to her summary judgment pleadings a list of the jobs filled at GTE during July 1, 1993 through December 31, 1993. However, there is no summary judgment evidence that shows the essential functions of the jobs listed or establishes that Morton was qualified to perform one or more of the jobs filled

---

[2]Morton did not provide GTE with a release from her physician indicating that she was recovered and ready to return to work.

3

during that period.

ANALYSIS

1. Standard of review.

We review the grant of summary judgement *de novo*, applying the same standard as the district court. We must consult the applicable law to ascertain the material factual issues, review the evidence bearing on those issues, viewing it in the light most favorable to the nonmoving party, and affirm the summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583 (5th Cir. 1995). Further, this Court can affirm the grant of summary judgment on any legal ground supported in the record and is not limited to those reasons stated in the district court order. *In re Jones*, 966 F.2d 169, 172 (5th Cir. 1992).

2. Is Morton a "qualified individual" under the ADA?

Title I of the ADA provides that an employer "shall not discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges." 42 U.S.C. § 12112(a)(1995). To prevail on her ADA claim, Morton must prove that (1) she has a disability; (2) she was qualified for the job, and (3) an adverse

4

employment decision was made solely because of her disability. *Rizzo v. Children's World Learning Center, Inc.,* 84 F.3d 758, 763 (5th Cir 1996). A "qualified individual with a disability" is a disabled employee who, with or without reasonable accommodation, can perform the essential functions of the job she holds or desires. 42 U.S.C. § 12111(8) (1995). The district court held that Morton failed to raise a fact question concerning whether or not she was a qualified individual on the date the ADA went into effect or any date thereafter. Rather, the district court found that the summary judgment evidence showed that Morton continuously represented that she was unable to perform her job duties and has failed to create a question of fact on the "qualified individual" issue.

The parties do not dispute that Morton has a disability as defined by the ADA. Morton identifies two adverse employment actions taken after the effective date of the ADA: Morton's termination in March 1993 and GTE's failure to treat her as an internal applicant when she asked to be reassigned during the Summer of 1993. We will assume, *arguendo*, that Morton established a genuine issue of fact on the first and third prongs of her ADA cause of action.

Focusing on the second prong, we find that Morton failed to create a genuine issue of fact concerning whether or not she was a "qualified individual." Morton submitted to the district court

5

copies of the resume she sent to GTE with her letter requesting reassignment, which evidences her credentials. However, her requests to GTE identified no specific job or type of work for which she wanted to be considered. Further, because the summary judgment record is completely devoid of evidence concerning the essential elements of any GTE job in 1993, the district court was correct in holding that Morton submitted no competent summary judgment evidence that Morton was a "qualified individual." A number of types of evidence are relevant to whether a function is "essential," including: (I) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the consequences of not requiring the incumbent to perform the function; (iv) the work experience of past incumbents in the job; and/or (v) the current work experience of incumbents in similar jobs. *Riel v. Electronic Data Systems Corporation*, 99 F.3d 678, 682-83 (5th Cir. 1996), *citing* 29 C.F.R. § 1630.2(n)(3).

The crux of Morton's argument on appeal is that she was qualified to do "her" job, by which we understand her to argue that she is qualified for employment as a computer programer at GTE. Here, the undisputed summary judgment evidence shows that "her" job at GTE underwent major changes after 1990, including the the addition of requirements that the employees utilize programming languages at which Morton was not proficient. Therefore, Morton's

6

reliance on the fact that she was previously qualified for a job at GTE is misplaced, absent some evidence that the same or substantially similar job existed in the Summer of 1993. Because she failed to provide the district court with evidence that she could perform the essential functions of a presently existing job, with or without accommodation, she did not create a genuine issue of material fact concerning her qualifications.

Likewise, Morton's arguments concerning the reasonableness of her proposed accommodations do not advance her argument without the essential elements evidence.

CONCLUSION

Based on the foregoing, we affirm the district court's grant of summary judgment for GTE on Morton's ADA claim.

The district court also granted GTE summary judgment on Morton's TCHRA claim. Although the notice of appeal is adequate to appeal the TCHRA ruling, Morton raises no issues on appeal regarding that claim. As recognized by the district court, the majority of courts construing the Texas act have relied almost exclusively on federal authorities. *See, e.g. Fogle v. Southwestern Bell Telephone Co.*, 800 F. Supp. 495, 498 (W.D. Tex. 1992). For these reasons, we affirm the district court's grant of summary judgment on Morton's TCHRA claim as well.

AFFIRMED.