**Linda GEER, Plaintiff,**

v.

**MARCO WAREHOUSING, INC., Defendant.**

**No. CIV.A. 00–D–1412–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 16, 2001.

Cinda R. York, Campbell Waller & Loper LLC, Birmingham, AL, for Plaintiff.

William F. Patty, Beers Anderson Jackson Nelson Hughes & Patty, PC, Montgomery, AL, Rodgers, Beers Anderson Jackson Nelson Hughes & Patty, PC, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Marco Warehousing's ("Marco") Motion For Summary Judgment ("Mot."), which was filed on August 2, 2001. Plaintiff Linda Geer ("Geer") filed a Memorandum in Opposition ("Opp.") on September 4, to which Marco filed a timely Reply on September 12. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Marco's Motion is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 42 U.S.C. § 2000(e). The parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

When a party moves for summary judgment, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the mat-

ter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

This determination involves applying substantive law to the pertinent facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence presented. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If this task is satisfied, the burden then shifts to the non-moving party, which must designate specific facts remaining for trial and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An action will be dismissed when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *See id.* at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

Geer brings this action alleging sex discrimination and retaliation. (Compl.¶¶ 15–22.) The first alleged instance of sexual harassment in the workplace occurred in the spring of 1995, shortly after Geer began her job of cleaning Marco's warehouse. (*Id.* at 5–6.) Having not yet learned how to turn on the warehouse lights, she had to ask the foreman Buck Rodgers ("Rodgers") for assistance, but he was asleep in his underwear. (*Id.* at 6.a.) After being roused from his rest, he accompanied Geer to the light switches, "embarrassing and belittling" her in front of

her male co-workers. (*Id.*) Geer reported the incident to her manager Sherman Faile ("Faile"), who is Marco's sole decision maker on employment related matters such as these. (Mot. at 4–5.) After Faile spoke with Rodgers, the latter called and apologized to Geer, and no further incidents between the two arose again. (Geer Dep. 236:3–237:21.)

About two years later, a co-worker named Lonnie Bozone ("Bozone") walked by Geer with his pants unzipped while she and her daughter were working. (Compl.¶¶ 6.b., 9.) Although this happened on several occasions, Geer never saw his underwear or genitalia, nor did Bozone ever make any noises or gestures during his meandering. (Geer Dep. 296:2–304:11.) When Geer finally reported the incidents to Faile, he made light of the situation, telling her that, were it to happen again, she should "grab it and try to pull it off." (*Id.* at 313:9–320:23.) He also assured her that he would talk to Bozone, and the incidents ceased thereafter. (*Id.* at 317:9–320:23.)

The next incident of which Geer complains concerns the reckless driving of co-worker Billy Tanner ("Tanner"), a front-end loader operator. (Compl.¶ 6.c.) Geer states that in early 1997, Tanner intentionally drove his loader dangerously close to her in order to frighten her, and then drove off smiling. (*Id.;* Geer Dep. 244:17–246:16.) Shortly thereafter, he actually rammed his vehicle head on into Geer's sweeper. (Geer Dep. 250:20–251:4.) Geer reported the incident to Faile, who spoke directly to Tanner and then promptly held two safety meetings, in the latter of which Geer was given the opportunity to address Tanner. (*Id.* at 257:8–258:8.) Geer was given safety cones to block off the aisles in which she was cleaning, but soon thereafter Tanner drove over the cones to taunt Geer. (*Id.* at 266:16–19.) On this occasion

he merely crossed the cones, smiled at her, and then re-crossed the cones going back about his work. (*Id.* at 271:12–22.) When Geer reported the incident to Faile, he suspended Tanner and threatened to terminate him should an incident ever again arise. (*Id.* 273:22–274:8; Faile Dep. 108:8–110:11.) Geer had no further problems with Tanner. (Geer Dep. 275:23–276:4.)

One morning in the summer of 1997, Geer and her daughter came to work to find a large drawing of Satan holding what Geer now contends was a penis in his hand, with the words "This is for you virgin" written underneath. (Compl.¶ 6.d.) Geer complained to Faile who confronted the "artist," Michael Dukes ("Dukes"). (Geer Dep. 333:16–18; 336:7–8.) Dukes proceeded to apologize to her, informing her that it was left for a co-worker and that Geer was not meant to see it. (*Id.* at 338:1–8.) Geer pressed Dukes as to his motivations, and, when she asked him what was in Satan's hand, he replied that it was a beer. (*Id.* at 338:3–12.) Approximately two weeks after this incident, she received a death threat on her answering machine which, although uncertain, she believed was left by Dukes. (*Id.* at 339:13–340:2; 346:14–16.) Upon reporting the incident to Faile, she was advised to tap the phone line or to get Caller ID; she did this but was unable to confirm that the message was left by Dukes, since she received no more such calls. (*Id.* at 340:4–343:17.)

Additionally Geer complains that in 1995, just after she had begun working for Marco, she had to clean up human feces. (*Id.* at 352:9–353:18.) Also around that time, her safety felt threatened by other employees playing "burnout baseball" on the dock when she was trying to clean. (*Id.* at 367:12–368:13.) It was threatened again in 1998 when some co-workers were shooting their bow and arrows in one of the aisles. (*Id.* at 349:18–350:2.) These

incidents were never reported to Faile. She did complain once that co-workers would regularly spit on the floor after she had cleaned it, though nothing was done about this. (*Id.* at 277:11–288:22.)

Geer also complains that her cleaning equipment began to malfunction around the autumn of 1999, thereby forcing her to manually push a broom, even though Faile had a new sweeper locked up. (*Id.* at 322:3–9; 332:20–333:6; 356:19–358:22.) Indeed, she alleges that she was forced to use dangerously faulty machines even though her male co-workers used functioning equipment. (*Id.* at 324:10–325:2; 330:1–331:20; 360:7–14.) Even when her cleaning devices were functioning properly, other people would allegedly misuse them, leaving them dirty or short of cleaning fluid. (*Id.* at 285:15–286:14; 290:4–22; 328:10–22.) She complained about this on a number of occasions to Faile. (*Id.* at 331:17–20.) Geer believes that these problems with the machinery were motivated by her gender, but Faile counters that there is a viable financial explanation. (Faile Aff. ¶¶ 7, 10.)

Around this time, Dukes, the employee who had drawn the picture of Satan two years beforehand, began to work as the night security guard. (Geer Dep. 334:7–18.) Feeling uncomfortable, Geer complained to Faile, who responded jokingly that there was nothing he could do since he could not discriminate against his employees on the basis of religion. (*Id.* at 384:6–22.) This prompted Geer to put her complaints in writing. (*Id.* at 371:11–16.) When Faile responded that he was growing tired of her constant complaining, Geer sought an attorney's advice and sent a certified letter specifically stating she was the victim of sexual harassment. (*Id.* at 372:8–22; 375:4–376:2; 379:1–2.) Faile refused to grant Geer's request that a third party investigate the allegations, and when

he learned that attorneys might involve themselves in the matter, he advised her to be aware of her safety codes and work rules. (*Id.* at 381:3–12.) Geer has not returned to work since. (Geer Aff. ¶ 9.)

## IV. DISCUSSION

Sexual harassment is a form of gender discrimination prohibited under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2(a)(1); *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that hostile work environment sexual harassment is actionable claim under Title VII). Geer can prevail on her hostile work environment claim by establishing that she suffered harassment that was sufficiently severe or pervasive such that the conditions of her employment were altered. *Burlington Indus. v. Ellerth,* 524 U.S. 742, 753–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Additionally, she is protected against retaliatory actions by her employer which might result from her decision to enforce her statutorily protected rights. 42 U.S.C. § 2000e–3(a); *EEOC v. Reichhold Chems., Inc.,* 988 F.2d 1564, 1571 (11th Cir.1993). Before the court addresses these issues, however, it must first determine which instances of alleged harassment it should consider in its analysis.

### A. *Continuing Violation Doctrine*

Title VII permits a plaintiff to seek recourse in a federal court only if she first files a charge of discrimination with the EEOC within 180 days after the allegedly discriminatory act occurred. 42 U.S.C. § 2000e–5(e). A plaintiff is procedurally barred from seeking a remedy with respect to acts which occurred more than 180 days prior to filing a charge. *See Lewis v. Bd. of Trustees of Alabama State Univ.,* 874 F.Supp. 1299, 1303 (M.D.Ala. 1995). There is an exception to this rule, however. Where the discriminatory acts

constitute a "continuing violation," a plaintiff may bring a suit on the basis of these acts so long as the "last occurrence of an instance of that practice" occurred within the 180–day window. *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992). Under this theory Geer requests that the court consider all her distasteful experiences in the course of determining the extent of Marco's liability.

The basis for the continuing violation exception lies in equity; discrimination appears in many shapes and sizes, sometimes in the form of discrete blatant incidents, and others in a more insidious, yet persistent fashion. Courts have recognized that, in the latter instance, it would be unfair to require a prospective plaintiff to file a charge of discrimination before the facts in support thereof were "apparent to a reasonably prudent person." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir.2001) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994) (holding that purpose of continuing violation rule is "to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred"). The focus in such circumstances, then, is on what event "should have alerted the average lay person to act" to ensure that her rights were protected. *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir.1997) (citations omitted); *Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir. 1990) ("What matters is whether, when and to what extent the plaintiff was on inquiry notice."). It is the cumulative effect of a discriminatory practice rather than any discrete occurrences which give rise to the application of the continuing violation doctrine. *Messer*, 130 F.3d at 135.

A hostile work environment claim is the quintessential continuing violation since it finds its basis in "an ongoing pattern of offensive conduct." *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998). However, the court has previously refused to recognize a per se rule in such cases, and it continues to so refuse. *Malone v. K–Mart Corp.*, 51 F.Supp.2d 1287, 1302 n. 4 (M.D.Ala.1999). The reasons for this refusal should be obvious; a plaintiff who failed to meet the statutory requirement would merely need to phrase her cause of action as a "hostile work environment," point to some unpleasant experiences she had in the past, and thwart the legislative intent. *See Hipp*, 252 F.3d at 1222 ("[A] claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the 180–day limitation period.") (internal citations omitted).

Rather, the court applies a three-factor test to determine whether the alleged discriminatory acts constitute a continuing violation:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Malone*, 51 F.Supp.2d at 1301 (quoting *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983)). Of

course, insofar as the contexts out of which these scenarios arise vary with each particular workplace, the court must engage in a "fact-specific inquiry" to determine whether the acts justify an exception to the 180–day rule. *Id.*

■ There is a legitimate question as to whether the acts of which Geer complains can be characterized as involving "the same type of discrimination" such that they can be connected in a single continuing violation. Certainly they all involved actions by male co-workers which tended to make the workplace less hospitable, but that is where the similarity ends. Each major event taking place prior to 1999 involved a different actor, none of whom acted in concert with the other. Since the court's inquiry in this regard turns on a finding of "an ongoing pattern of offensive conduct," *Lane,* 13 F.Supp.2d at 1272, the court is reluctant to conclude that one man's erratic driving and another's tasteless art are indicative of the same type of discrimination, let alone a pattern.[1]

There is a clear sense in which Rodgers' underwear incident and Bozone's problem zipper are related to one another, but the general rule is that, to constitute a serial violation, they must relate to some act within the 180–day period which serves as an "anchor" for the earlier claims. *See DeNovellis v. Shalala,* 124 F.3d 298, 307 (1st Cir.1997); *Lewis,* 874 F.Supp. at 1303 ("[T]he doctrine applies when the nexus between claims that are timely-filed and those that are time-barred is substantial."). The simple fact is that the only actions that took place within the 180–day period can be attributed to Faile alone since he was the one responsible for Dukes' work schedule and the location of Geer's cleaning equipment. At the most, the only connection between these anchor claims and the prior acts is Dukes' involvement.

However, two years had lapsed since the unproven prank phone call (which, incidentally, seems more like a criminal matter than one of workplace discrimination). Indeed, Geer points to just one relatively major event in 1995, and three more in 1997, in support of her assertion that there was an ongoing pattern of discrimination.[2] As discussed above, each activity was performed by a different individual, none of whom ever had any negative interaction with Geer again. This suggests that Geer cannot satisfy the second factor in the analysis; namely, the acts were in no way recurring, but were more in the nature of isolated instances. *See, e.g., Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1166 (7th Cir.1996) ("Acts of sexual harassment so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations.").

---

1. Geer also asks the court to consider evidence that a female employee left Marco because of sexual harassment. Geer has no knowledge of this incident beyond allegedly having spoken with the former employee. As this is a "classic example of hearsay," the court will not consider the evidence in its summary judgment motion. *Bush v. Barnett Bank of Pinellas County,* 916 F.Supp. 1244, 1256 (M.D.Fla.1996) (refusing for purposes of summary judgment to admit statement relayed to plaintiff by third party).

2. The court fails to see how the use of weapons or the playing of games could possibly be characterized as instances of sexual harassment. The court is sensitive to Geer's concern for her safety at work but does not believe these are the types of activities upon which a Title VII claim can be based. Additionally, absent any evidence that either these occurrences or the occasion in which she had to pick up human feces were in any way directed toward her, the court will be reluctant to consider them as examples of an ongoing pattern of discrimination.

However, even if all of the above incidents could in some way be perceived as an ongoing pattern of connected activity, they could not be regarded as a continuing violation because of their permanence, "perhaps the most important factor" in this analysis. *Malone*, 51 F.Supp.2d at 1301. Permanence is merely a function of whether an employee should have known she should assert her rights. *Id.* The court need not address whether the alleged instances of discrimination would have prompted a reasonable person to believe her rights were being violated, because the record gives rise to the inference that Geer believed as much.

▪ In each of the major incidents occurring prior to the 180–day period, Geer complained to Faile about the activity.[3] Such complaints highly suggest that Geer was able at that time to appreciate that the acts gave rise to a right of action. *See Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 225 (6th Cir.1991) ("It is inconceivable that [the plaintiff] did not know that he was a victim of ... harassment at that time, since he complained about it to his superiors."). The continuing violation doctrine does not exist to provide a "second chance" to an employee who allowed a legitimate claim to lapse. *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1264 (11th Cir. 2000) (internal citations omitted). Likewise it does not permit the employee to buttress a weak claim of sexual harassment by referencing untimely facts that bear the most tenuous of relations to timely facts. *See Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 221 (1st Cir.1996) ("Common sense teaches

that a plaintiff cannot resuscitate time-barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non-discriminatory, non-time-barred act.").

Even with the most imaginative portrayal of Geer's version of the facts, the court simply cannot fathom how she could have interpreted the malfunctioning equipment as a Title VII claim yet failed to similarly perceive some of the time-barred acts. Nor can the court conclude that this timely incident was in any sense a final straw alerting Geer to an overall pattern. A two-year lapse between unrelated, discrete events is insufficient to satisfy the continuing violation doctrine's requirement that the acts be linked by "similarity, repetition, and continuity." *Provencher v. CVS Pharmacy*, 145 F.3d 5, 15 (1st Cir.1998). As such, the court finds that all alleged incidents of discrimination which occurred prior to 180–day window in 1999 are time-barred.

### B. *Hostile Work Environment*

In order to state a claim for hostile work environment, Geer must show: (1) that she is a member of a protected group; (2) that she has been subjected to unwanted harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999); *Ellerth*, 524 U.S. at 753–54, 118 S.Ct. 2257. As she is a woman, the first

---

**3.** The adequacy to which Faile responded to such complaints is irrelevant for present purposes. The present analysis focuses on whether Geer has a cause of action, not whether that cause of action is viable. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir.1997) (holding that an employ-

er's refusal to take action is not itself an act of Title VII discrimination); *Burrell v. City Univ. of New York*, 995 F.Supp. 398, 407 (S.D.N.Y. 1998) (employer's failure to remedy harassment goes to liability, but does not establish actionable sexual harassment).

factor is satisfied. However, insofar as the only instances which the court may consider in its analysis are innocuous for purposes of the remaining factors, summary judgment is appropriate on this claim.

■ The only alleged acts of discrimination to have occurred in the 180–day window are Faile's failure to accommodate Geer's request to transfer Dukes to another shift, the poor condition of Geer's cleaning equipment, and the tendency of Marco employees to spit tobacco on the newly cleaned warehouse floor. Nasty habit though spitting may be, Title VII is not a "civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Geer has provided no evidence suggesting that even the rudest of the culprits were motivated by gender considerations, so the court is not inclined to view the problem as one of harassment. *See Henson v. Dundee*, 682 F.2d 897, 904 (1982) ("In making a claim for a hostile work environment ... the plaintiff must show that but for the fact of her sex she would not have been the object of harassment."). Similarly, while the use of faulty equipment is an unfortunate plight, Geer has failed to raise even an issue of material fact as to whether the problem based on her sex, let alone whether it constituted "intimidation, ridicule, and insult" that was so "severe or pervasive" as to constitute an "abusive working environment." *Harris v. Forklift Systems*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations omitted).

Additionally, the court fails to understand how Faile's refusal to accommodate Geer's demand for space between herself and Dukes constitutes a viable claim under Title VII. Certainly a workplace can seem "hostile" when two individuals whose personalities conflict share the same space, but Geer has offered no basis from which

the court can impute liability to Marco on this ground. Geer asserts that her encounters with Dukes have been "scary" but she also admits that he never spoke to her nor made any gestures of a sexual nature toward her during his duties as a security guard. (Geer Dep. 344:7–345:17.) In fact, the record provides no evidence whatsoever of any contact between them in the previous two years. This is an important fact to consider since an employer is relieved of liability if "prompt and appropriate remedial action" is taken to prevent future harassment. *Steele v. Offshore Shipbuilding*, 867 F.2d 1311, 1316 (11th Cir.1989).

The court is not persuaded that, after two years had passed without incident, Faile was required to assuage Geer's fears with regard to Dukes by granting her request that he be given a different shift. Certainly the reasonableness of an employer's response varies with the particular factual scenario. Geer had not shown that the drawing was meant for her eyes, nor were her eyes able to decipher the precise graphic nature thereof. Faile was unconvinced that the threat on Geer's answering machine was left by Dukes, nor is it clear that the problem is one for which Faile is responsible. *Cf. P. v. Delta Air Lines, Inc.*, 102 F.Supp.2d 132, 138 (E.D.N.Y. 2000) ("As a general proposition, employers are not responsible under Title VII for hostile ... acts resulting from non-work-related, off-duty interactions between co-employees."). The court finds that it is enough that Faile had already taken steps to ensure that Dukes never harassed her again. *Robinson v. Jacksonville Shipyards*, 760 F.Supp. 1486, 1531 (M.D.Fla. 1991) (observing that in the Eleventh Circuit, "an employer can defend successfully by showing that the conduct brought to the company's attention was not repeated after the employer took action"). Accord-

ingly, summary judgment should be granted on the hostile work environment claim.[4]

## C. Sex Discrimination

■ Geer also asserts that Marco's refusal to allow her to use properly functioning cleaning equipment constitutes discrimination insofar as her male co-workers used new machinery in the course of their work. Under the *McDonnell Douglas* framework, the burden is on Geer to demonstrate that "(1) she is a member of a protected class; (2) she was subjected to an adverse employment decision; (3) her employer treated similarly situated males differently; and (4) she was qualified to do the job." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999). The parties do not contest the first and fourth prongs of the prima facie test. They disagree, however, whether the use of malfunctioning equipment constitutes an adverse employment action. Further disagreement lies with whether part-time male employees who operate new loaders and forklifts can be regarded as "similarly situated." The court will address these issues in turn.

A materially adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). Indeed, in *Gupta v. Florida Board of Regents,* 212 F.3d 571 (11th Cir. 2000), a case relied upon by Geer, the Eleventh Circuit held that a teacher who was required to teach more classes, including more undesirable ones, than other teachers, failed to provide facts "serious and tangible enough" to raise an issue of fact with regard to this factor. *Id.* at 587–88. While not identical to Geer's situation, *Gupta* is instructive in establishing that the threshold for Title VII must involve employment action that does more than further strain an employee's workload. Inasmuch as Title VII is not a vehicle to be used by employees to compel their employers to upgrade their technology, the court refuses to find that faulty equipment constitutes a materially adverse employment condition. *See Enowmbitang v. Seagate Tech., Inc.,* 148 F.3d 970, 973 (8th Cir.1998) (holding that employer's failure to provide plaintiff with a computer "does not rise above a 'mere inconvenience' and therefore does not constitute an adverse employment action") (internal citation omitted).

■ Furthermore, to prove sex discrimination, Geer must show that she was treated differently than her male co-workers who "were similarly situated in all relevant respects." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). It is true that eight of the male co-workers who operated new loaders and forklifts were part-time employees of Marco as was Geer, but this is where the similarity ends. An employer's decision to upgrade technology in one area should not be interpreted as sexual discrimination merely because the employee in the other area happens to be a member of a protected class. *See, e.g., Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992) (holding that similarly-situated individuals are those who "have dealt with the same supervisor, been

---

4. Even were the court to consider the actions taking place prior to 1999 in its hostile work environment analysis, summary judgment would be proper for the same reason. Namely, the record indicates that every time Geer complained to Faile about an allegedly discriminatory action, he successfully took steps to ensure that the individual in question never bothered Geer again. While his response to the Bozone incident may have involved a tasteless joke, his liability turns on "the effectiveness of the actions," not on the form thereof. *Robinson,* 760 F.Supp. at 1531. Additionally, the incidents are too isolated to satisfy the pervasiveness requirement. *See Mendoza,* 195 F.3d at 1246–47 (citing cases).

subject to the same standards, and have engaged in the same conduct without such differentiating ... circumstances that would distinguish ... the employer's treatment of them"). In short, a relevant respect for these purposes would be individuals who had to use the same type of machinery. Geer fails in this regard when she acknowledges that some of the cleaning equipment was faulty because other male employees used it. (Geer Dep. 285:8–286:14.) If other males used the same equipment, then Geer cannot plausibly contend that similarly situated males were treated any differently than her.[5] Accordingly the court finds that Geer has failed to establish a prima facie case of discrimination.

Even had this burden been met, Marco can rebut the prima facie case by producing "legitimate, non-discriminatory reasons for its employment action." *Holifield*, 115 F.3d at 1564. Marco has demonstrated that any disparity between the quality of equipment used by men was driven by economic considerations, and is thus exempted by the business necessity rule. 42 U.S.C. § 2000e–2(k)(1)(A)(i). To wit, a boom in business calls for more forklifts, while it has little effect on the cleanliness of the floor. The court agrees that such justifications seem a more plausible explanation for the equipment problems than discriminatory motives. Moreover, the court's judgment as to the wisdom of such decisions is irrelevant, for Title VII is not designed to make federal courts "sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991); *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1543

(11th Cir.1997) (holding that "federal courts do not sit to second-guess the business judgment of employers").

Presented with economic, nondiscriminatory reasons for the faulty equipment, the burden of proof once again shifts back to Geer to demonstrate "that the proffered reason was not the true reason for the employment decision." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Geer merely counters that "those reasons do not address the fact that Defendant did not provide functioning equipment for Plaintiff." (Opp. at 18.) The implicit assumption here seems to be that Marco must always upgrade all equipment or none at all. This reply is abundantly inadequate to show pretext, so summary judgment is proper on the claim of sex discrimination.

### D. *Retaliation*

Geer asserts a claim of retaliation against Marco on the grounds that, when she alerted Faile to the fact that she was considering legal recourse, he responded by advising her to know her safety codes and her work rules. The participation clause of Section 704(a) of Title VII protects against discrimination when the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a). The opposition clause, on the other hand, protects employees who merely have "opposed any practice made an unlawful employment practice" under Title VII. *Id.* Geer can establish a prima facie case under either clause by demonstrating that (1) she engaged in statutorily protected activity; (2) she suffered adverse employment action; and (3) there was a causal nexus

---

5. Geer also speculates that the male co-workers sabotaged her equipment when they used it by failing to repair it or leaving it dirty. As she proffers no evidence suggesting their laziness was intentional discrimination aimed at her, the court will not entertain the possibility that it is actionable under Title VII.

between the first two factors. *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1074 (11th Cir.1995). However, the protection afforded plaintiffs differ under each clause, *EEOC v. Total Sys. Servs., Inc.,* 221 F.3d 1171, 1175–76 (11th Cir.2000), so it is important for the court to determine the brand of protected activity, if any, in which Geer engaged.

Protected activity under the participation clause includes that "which occurs in conjunction with ... the filing of a formal charge with the EEOC." *Id.* at 1174. While the Eleventh Circuit has never addressed the reach of the phrase "in conjunction with," numerous courts have held that it extends beyond filing a charge to the expression of an intent to file a charge. *See, e.g., Gifford v. Atchison, Topeka and Santa Fe Ry. Co.,* 685 F.2d 1149, 1156 n. 2 (9th Cir.1982) ("We see no legal distinction between filing a charge, which is clearly protected, and threatening to file a charge."); *Croushorn v. Bd. of Trustees of Univ. of Tenn.,* 518 F.Supp. 9, 22 (M.D.Tenn.1980) (observing that the employer's motivation is the same whether the charge is filed or merely imminent). The court agrees that employees should not be bullied out of filing E.E.O.C. charges, and while there is little difference between the actual filing and the stated intent thereto, the court finds a marked distinction between a stated intent to file a charge and a suggestion that an employee might consider legal recourse. There being no evidence to suggest that Geer had even given any consideration to filing a formal charge, the court finds that she has merely opposed allegedly discriminatory actions. *See Rollins v. Florida Dep't of Law Enforcement,* 868 F.2d 397, 400 (11th Cir.1989) (observing that opposition clause

covers formal and informal complaints to supervisors).

While there is no requirement under the participation clause that the proceeding be based upon a valid claim of discrimination, the opposition clause has been interpreted to require that the plaintiff hold an "objectively reasonable belief" that the opposed acts constitute discrimination. *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1351 (11th Cir.1999). The action opposed need not have actually been sexual harassment, however. *Id.* It would be impertinent of the court to require lay persons to possess an intimate understanding of the law, particularly in an area as nuanced as this one. Although the court has determined that Geer has not adequately demonstrated sex discrimination, it cannot conclude that her belief in that regard was objectively unreasonable. As such, the court finds that Geer has satisfied the first prong of a prima facie case of retaliation-she engaged in protected activity.

 Faile responded to Geer's certified letter by remarking that, were she to involve lawyers in the situation, she should beware of her safety codes and work rules. Such a response indisputably is related to the protected activity, so Geer's prima facie case of retaliation turns solely upon whether such a statement can constitute an adverse employment action. Construing the evidence in the light most favorable to Geer, Faile's statement appears to be a threat as to her future conditions of employment at Marco. More specifically, Faile implied that, should Geer decide to invoke the letter of the law, he might be especially restrictive in interpreting the rules over which he has the final say.[6]

---

**6.** Geer asserts that the overall adverse employment action is one of constructive discharge. In other words, she would have the court view Faile's threat as the final step toward making the workplace so "intolerable that a reasonable person would have felt compelled to resign." *See Thomas v. Dillard Dep't Stores, Inc.,* 116 F.3d 1432, 1434 (11th Cir.

In the Eleventh Circuit, "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions." *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998). The *Wideman* court, however, opted not to define "threshold level of substantiality" constituting retaliation. *Id.* Rather, it merely held that the combination of a suspension, the solicitation only of negative statements in the employer's investigation, a death threat, and a refusal to promptly permit an employee to seek medical care met the threshold to survive summary judgment. *Id.* at 1455–56. On the other hand, the Eleventh Circuit has held that a supervisor's filing of two negative job performance memoranda falls short of constituting an adverse employment action. *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1240–41 (11th Cir.2001). Because the present matter falls somewhere in between the *Wideman* and the *Davis* facts, a determination of whether it meets the "threshold" requires more analysis.

One district court within the Eleventh Circuit has explicitly found that "threats of termination do not constitute adverse employment actions" for purposes of retaliation. *Mistretta v. Volusia County Dep't of Corrections*, 61 F.Supp.2d 1255, 1260 (M.D.Fla.1999). The *Mistretta* court based its conclusion in part on Ninth Circuit precedent, *id.*, a relevant fact to consider insofar as the *Wideman* court announced that the Eleventh Circuit shares views of the Ninth and Tenth Circuit with regard to the class of activities that consti-

tute adverse employment actions. *Wideman*, 141 F.3d at 1456. Indeed, both the Ninth and Tenth Circuits have held that mere threats of termination that are not carried out do not constitute adverse employment actions. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 874–75 (9th Cir.1998) ("Mere threats [of dismissal] and harsh words are insufficient [to establish a claim of retaliation]."); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1382 (10th Cir. 1994) (threats of special scrutiny as to work performance that were never carried out do not rise to the level of adverse employment action); *see also Kersting v. Wal–Mart*, 250 F.3d 1109, 1118 (7th Cir. 2001) (holding that "two warnings do not amount to a materially adverse employment action").

The court stops short of recognizing a per se rule in this regard. Conceivably certain threats could be perceived as such an impediment to opposition that they could be regarded as retaliation. The statements made by Faile were ambiguous at best and Geer never returned to work to determine their meaning or their gravity. Without more, the court refuses to find that Geer has raised a genuine issue of material fact as to whether her terms and conditions of employment were altered as a result of her complaints. Therefore the court finds that summary judgment is appropriate on the claim of retaliation.

## V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Marco's Motion For Summary Judgment be and the

___

1997) (internal quotations omitted). Because this standard is higher than that for a hostile work environment claim, then *a fortiori* Geer's contention must fail. *See Hipp*, 252 F.3d at 1231. Furthermore, a constructive discharge claim is unavailable where an employee "assume[s] the worst" and "jump[s] to conclusions too fast" rather than trying to

work out the problem. *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987). Faile's threat should not have been perceived as a death knell, nor will the court conclude as much. In short, Geer has failed to establish that she was constructively discharged.

same is hereby GRANTED. A judgment in accordance with this Memorandum Opinion and Order shall be entered separately.